Citation Nr: 1527853 
Decision Date: 06/29/15 Archive Date: 07/09/15

DOCKET NO. 09-03 707 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to service connection for a skin disorder, to include psoriasis.

2. Entitlement to service connection for multiple sclerosis (MS), to include as due to service-connected traumatic brain injury (TBI).


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

W.T. Snyder, Counsel

INTRODUCTION

The Veteran served on active duty from February 1976 to April 1979.

This matter initially came to the Board of Veterans' Appeals (Board) on appeal from May 2007 and August 2008 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina, which denied the benefits sought on appeal. The May 2007 rating decision denied the MS and TBI claims; and, the August 2008 rating decision denied entitlement to service connection for psoriasis and nose bleeds. The Board has styled the issue of the skin-related claim as noted in order to insure that all of the Veteran's asserted symptomatology is considered. See Clemons v. Shinseki, 23 Vet. App. 1 (2009).

While the case was on remand, in a November 2014 rating decision, the Appeals Management Center (AMC), Washington, DC, granted service connection for TBI residuals and assigned an initial noncompensable rating, see 38 C.F.R. § 4.31 (2014), effective in March 2007. There is no indication in the claims file that the Veteran appealed either the initial rating or effective date. Hence, that issue is not before the Board and, except by reference, will not be addressed in the decision below. See 38 C.F.R. § 20.200 (2014); see also Grantham v. Brown, 114 F.3d 1156 (Fed. Cir. 1997) (where an appealed claim for service connection is granted during the pendency of the appeal, a second notice of disagreement must thereafter be timely filed to initiate appellate review of the claim concerning "downstream" issues such as the compensation level assigned for the disability and the effective date).

The Veteran and his spouse testified before the undersigned Acting Veterans Law Judge at a Board hearing at the local RO in July 2010. A transcript of the hearing has been associated with the claims file. 

As indicated above, the Board remanded the case in April 2011 and March 2014 for further evidentiary development, including VA examinations, and re-adjudication. 

The Veteran has Virtual and VBMS VA paperless claims files, which are highly secured electronic repositories that are used to store and review documents involved in the claims process. The Board has reviewed the contents of both files while reviewing this appeal. 


FINDINGS OF FACT

1. The AMC completed the additional development directed in the March 2014 Board remand.

2. The Veteran's currently diagnosed skin disorders are not due to a disease or injury incurred in active service.

3. The Veteran's MS is not due to a disease or injury incurred in active service, to include a TBI.


CONCLUSIONS OF LAW

1. The requirements for entitlement to service connection for a skin disorder, including psoriasis, have not been met. 38 U.S.C.A. §§ 1131, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303 (2014).

2. The requirements for entitlement to service connection for MS have not been met. 38 U.S.C.A. §§ 1101, 1112, 1131, 1137, 5103, 5103A, 5107(b) (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307(a), 3.309(a), 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The requirements of the VCAA, Pub. L. No. 106-475, 114 Stat. 2096 (Nov. 9, 2000) (codified at 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, and 5126, have been met. There is no issue as to providing an appropriate application form or completeness of the application. Prior to issuance of the rating decisions appealed, in letters dated in January 2003 and February 2007, the RO provided the Veteran fully time- and content-compliant VCAA notice. See 38 C.F.R. § 3.159(b); see also Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006).

VA has also fulfilled its duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. See 38 C.F.R. § 3.159(c). Further, the Board remanded the case to insure that the examinations were adequate for appellate review purposes. The Veteran's service treatment records, VA and available private treatment records are in the claims file. The records used by the Social Security Administration (SSA) to award disability benefits in 2002 are also in the claims file. Documentation in the claims file reflects that the AOJ made numerous requests of the Veteran for the names of all private physicians whom he asserts treated him in the 1980s, but the Veteran responded only by repeating his asserted symptoms. He provided no names. The Board also notes that the Veteran testified at the hearing that two of the doctors he saw are deceased, and no records were available. Nonetheless, the entirety of his testimony suggests that he saw more than those two. Hence, the Board finds that all reasonable efforts were expended by the AMC to comply with the Board's remand instructions. See id.; see also Wood v. Derwinski, 1 Vet. App. 190, 193 (1991).

The United States Court of Appeals for Veterans Claims (Court) has interpreted the provisions of 38 C.F.R. § 3.103(c)(2) as imposing two distinct duties on VA employees, including Board personnel, in conducting hearings: the duty to explain fully the issues; and, the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010) (per curiam). At the hearing, the undersigned identified the issues before the Board, asked questions of the Veteran that ensured his testimony addressed the relevant evidence needed to prove his claim; and, suggested specific evidence he might seek that would support and prove his claim. The undersigned paid particular attention to trying to develop evidence of symptomatology during the applicable presumptive period. The Veteran did not voice any disagreement with how the hearing was conducted. Hence, the Board finds the applicable regulatory requirements, as interpreted by the Court in Bryant, were complied with.

In sum, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication. Hence, the Board may address the merits of the appeal without prejudice to him.

The Board has reviewed all the evidence in the Veteran's claims file. Although the Board has an obligation to provide adequate reasons and bases supporting this decision, there is no requirement that the evidence submitted by an appellant or obtained on his behalf be discussed in detail. Rather, the Board's analysis below will focus specifically on what evidence is needed to substantiate the claim and what the evidence in the claims file shows, or fails to show, with respect to the claim. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000).

Governing Law and Regulations

Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1131; 38 C.F.R. § 3.303. 

Establishing service connection generally requires medical or, in certain circumstances, lay evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Caluza v. Brown, 7 Vet. App. 498, 506 (1995), aff'd per curiam, 78 F. 3d 604 (Fed. Cir. 1996) (table).

Where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and MS becomes manifest to a degree of 10 percent within seven years from date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a), 3.309(a).

Under 38 C.F.R. § 3.303(b), an alternative method of establishing the second and third Shedden/Caluza element is through a demonstration of continuity of symptomatology. However, this method may be used only for the chronic diseases listed in 38 C.F.R. § 3.309. Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). 

Continuity of symptomatology may be established if a claimant can demonstrate (1) that a condition was "noted" during service; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology. Savage v. Gober, 10 Vet. App. 488 (1997), overruled on other grounds by Walker.

Service connection may be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

"Symptoms, not treatment, are the essence of any evidence of continuity of symptomatology." Savage, 10 Vet. App. at 495-97; (citing Wilson v. Derwinski, 2 Vet. App. 16, 19 (1991). Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno v. Brown, 6 Vet. App. 465, 469-70 (1994) (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted").

In relevant part, 38 U.S.C.A. § 1154(a) requires that VA give "due consideration" to "all pertinent medical and lay evidence" in evaluating a claim for disability or death benefits. Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009).

The Board must fully consider the lay evidence of record. Davidson, 581 F.3d 1313 (Fed. Cir. 2009). A layperson is competent to report on the onset of disability and, when applicable, continuity of his or her current symptomatology. See Layno, 6 Vet. App. at 470 (a Veteran is competent to report on that of which he or she has personal knowledge). Lay evidence can also be competent and sufficient to establish a diagnosis if (1) the layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007).
 
When considering whether lay evidence is competent, the Board must determine, on a case-by-case basis, whether the Veteran's particular disability is the type of disability for which lay evidence may be competent. Kahana v. Shinseki, 24 Vet. App. 428 (2011); see also Jandreau, supra. 

The Board is charged with the duty to assess the credibility and weight given to evidence. Wensch v. Principi, 15 Vet. App. 362, 367 (2001). As a finder of fact, when considering whether lay evidence is satisfactory, the Board may also properly consider internal inconsistency of the statements, facial plausibility, and consistency with other evidence submitted on behalf of the Veteran, and the Veteran's demeanor when testifying at a hearing. See Dalton v. Nicholson, 21 Vet. App. 23, 38 (2007); Caluza, 7 Vet. App. at 511, aff'd per curiam, 78 F.3d 604 (Fed. Cir. 1996).

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Skin Disorder

Analysis

VA treatment records reflect that the Veteran is currently diagnosed with psoriasis. His service treatment records reflect that he experienced a variety of skin ailments in service, including ringworm, genital warts, and tinea versicolor. Service treatment records also note a diagnosis of infected hair follicles. The Veteran contends that he has had recurrent skin problems since 1976 when he was on temporary duty in Pensacola, Florida and contracted what was later diagnosed as ringworm. The February 1979 Report of Medical Examination For ETS reflects that the Veteran's skin was assessed as normal.

VA examination reports of June 2008, May 2011, and March 2012 reflect that the examiner acknowledged the Veteran's multiple in-service diagnoses of skin disorders, diagnosed him with psoriasis, and opined that it was not as likely as not related to service. The only rationale noted by the examiner was that there was no documentation substantiating that fact. The examiner did not consider the Veteran's contentions regarding the continuity of the skin complaints or discuss whether it was possible that the multiple in-service diagnoses were an early manifestation of, or are otherwise etiologically linked to, the Veteran's current psoriasis. Hence, as noted earlier, the Board remanded again for a more complete rationale.

The June 2014 examination report reflects that the examiner first noted that the Veteran's current diagnosis of psoriasis was established by biopsy and clinical confirmation by a VA dermatologist. Second, the examiner noted that the tinea corporis, tinea versicolor, and folliculitis with which the Veteran was diagnosed in May 1976, July 1977, and April 1978 were all infectious skin conditions which were treated with antibiotics or antifungals. On the other hand, the examiner noted, psoriasis is not an infectious condition but is an autoimmune disorder. As such, psoriasis is not causally connected to infectious conditions such as tinea or folliculitis, which were noted and treated during active service. The examiner noted that there is no indication in the claims file that psoriasis, or symptoms that could be indicative of psoriasis, manifested during active service.
Unlike the 2008, 2011, and 2011examination reports, the June 2014 examination report reflects that the examiner provided a full rationale for the negative nexus opinion. The examiner's opinion is not contradicted by the competent evidence of record. Hence, the Board finds the examiner's opinion adequate and highly probative on the issue. See Nieves v. Rodriguez, 22 Vet. App. 295 (2008). 

As concerns the Veteran's lay assertions of continuous skin symptoms from his active service to the current date, the examination report of his physical examination for separation from active service notes that there was no skin disorder at that time. Further, the Veteran's treatment records reflect that his current symptoms had their onset in the 2000s. Nonetheless, he asserts that he was in fact diagnosed with psoriasis while in active service, and that his current skin disorder is causally connected to that. As to the former, while the Veteran is competent to report with what he was diagnosed during active service, the evidence of record shows his recall to be inaccurate and unreliable as concerns an in-service diagnosis of psoriasis.

As concerns the Veteran's opinion that his skin disorder is causally connected to active service, while he is competent to report skin symptoms, see 38 C.F.R. § 3.159(a)(2), he would not be competent to opine that those symptoms (especially symptoms noted long after service) are related to a particular skin disease or disorder. This is beyond the training and experience of a lay person. See 38 C.F.R. § 3.159(a)(1); see also Jandreau, 492 F. 3d 1372. There is no evidence that the Veteran has medical training. Hence, his personal opinion is of little probative value. Thus, in light of all of the above, the Board is constrained to find the preponderance of the evidence is against the claim. 38 C.F.R. § 3.303.

MS

Analysis

The Veteran's private treatment records reflect that he was definitively diagnosed with MS between 1998 and 2000 via an MRI examination of the brain. The core issue of this appeal, however, is whether the disease manifested to a sufficient extent within seven years of the Veteran's separation from active service, as presumptive service connection is not in fact based on a diagnosis but evidence of manifested symptoms related to the disease. See 38 C.F.R. § 3.307(a).

Per the Veteran's several written submissions of record, and his hearing testimony, he was in close proximity of an explosion at Ft. Bragg, North Carolina in 1978 that resulted in fatalities. Although he did not report to sick call or otherwise seek treatment, the Veteran asserts that he has experienced constant headaches and nosebleeds ever since. He also asserts that his MS is causally connected to that event. The Veteran's wife testified at the hearing that she met the Veteran in 1980. She testified further that the Veteran could not sleep because of headaches, and he would cry and groan at night. As noted in the Introduction, he is now service connected for the residuals of a TBI. In addition to his asserted causal link with the TBI, the Veteran also testified at the hearing that he sought emergent medical treatment on multiple occasions from 1980 to 1989 for symptoms such as fainting, forgetfulness, and weakness, which he stated were diagnosed on those occasions as transient ischemic attacks (TIAs).

In a March 2012 addendum to the May 2011 VA examination report, a second examiner reviewed the claims file and opined that the in-service explosion did not cause the Veteran's MS, pointing out that while there are many factors that can contribute to the development of the disease, exposure to an explosion was not known to be one of the factors. The Board, however, as noted earlier, remanded again because the examiner did not provide a full rationale, and to ensure that the Veteran's lay reports were fully considered by the examiner. The Board also noted that the absence of documented medical treatment, alone, is not an adequate basis for a negative nexus opinion.

The April 2011 Board remand directed that a medical examiner opine whether the Veteran's symptoms which he asserts that he experienced in the 1980s were misdiagnosed as TIAs and were in fact early symptoms of MS. The May 2011 VA examination report reflects that the examiner noted that, without the medical records related to the asserted events in the 1980s, any opinion that might be rendered on whether the TIAs may have been symptoms of MS would be based on conjecture or speculation.

The June 2014 examination report reflects that the examiner noted that MS is a demyelinating disorder. While there is medical literature that has suggested the disease could be associated with a TBI, more recent studies have failed to find a link between prior head trauma and subsequent MS. (Citations omitted by the Board). The examiner referenced a 2012 Chinese study of over 72,000 patients with TBI which noted that they were at a higher risk during the 6 years of the study. The mean latency period for the development of MS, however, was 563 days, which is much less than the many years between the Veteran's TBI and his diagnosis with MS. The study also assessed the risk in relation to the severity of the disease and determined that patients who had never been hospitalized for the treatment for TBI were not at increased risk for MS. The examiner opined that, from the review of the Veteran's records, it appeared that he had a mild TBI without hospitalization. The examiner opined further that, unfortunately, he was unable to arrive at a conclusion different than those of previous examiners that it was not at least as likely as not (at least a 50-percent probability) that the Veteran's MS was causally connected to his in-service TBI.

In a separate November 2014 addendum, the examiner noted that the Veteran reported occasional headaches, but there was no evidence in the last several years of any documented long-standing headache issues. The Veteran also reported that the headaches began months after his injury. So, the examiner opined that they were unrelated to the TBI. The examiner also noted that the Veteran reported chronic nosebleeds that he related to the TBI; but the examiner opined that the timing of the onset of the nosebleeds were too remote from the TBI to be considered connected. The examiner noted that the Veteran was not taking any medications for the headaches dating back to 2002 through the VA; and the service treatment records did not note any level of disability. In light of those factors, the examiner opined that while the Veteran sustained a mild TBI which was service connected, he had no sequelae related to the TBI. Hence, his MS has no causal connection to a single, very mild TBI.

As concerns the Veteran's reported events in the 1980s which the Veteran reported were diagnosed as TIAs, as did the examiners at earlier VA examinations, the June 2014 examination report reflects that the examiner noted that any opinion without related records would be speculative. The examiner did note further that, while it is possible that the MS likely had been present for a while before the diagnosis, the possibility that it remained unnoticed for 20 years after the Veteran's discharge would be unlikely. The examiner opined further that to pinpoint the date of onset of the MS to the time of the Veteran's service would also be speculative.

The Board finds that the VA examiner considered all of the evidence of record, to include the Veteran's lay reports, and the examiner also explained the relevance of any absence of treatment, where applicable. Thus, the Board finds the opinion adequate and highly probative. See Nieves, 22 Vet. App. 295.

The Board again acknowledges the Veteran's competency to report symptoms he experienced and what he was told, 38 C.F.R. § 3.159(a)(2), but his lay reports still must be tested for accuracy and credibility. The Board has already referenced the repeated efforts to develop evidence of the specific symptoms the Veteran may have manifested in the seven-year period after his separation from active service, to include by the undersigned at the hearing. Other than the reported instances of fainting, forgetfulness, and weakness, each time the Veteran was asked, he emphasized the headaches and nosebleeds, which he deems connected to his TBI.

As set forth above, a VA medical examiner opined that there is no connection between the headaches and nosebleeds and either the TBI or MS. The Board also notes that the private records dated in the 1990s, which are the closest in time to the presumptive period, contain no indication or report by the Veteran of any relevant symptoms in the 1980s. The SSA relied solely on those private records, as the Veteran repeatedly reported the onset of his MS as in the 1990s. Thus, when the Veteran's recall was better than it is now, he did not report to his private providers that he had any relevant treatment or symptoms in the 1980s. In light of these noted factors, the Board is constrained to find the Veteran's lay assertions credible only to the extent that he may have been diagnosed with TIAs. There is an insufficient factual basis to infer that what may have been early symptoms of MS were misdiagnoses as TIAs.

The earlier discussion on the Veteran's competency to opine on the etiology of disease is incorporated here by reference. Hence, the Board finds that opining on the etiology of MS, especially after the passage of many years, is beyond the training and experience of a lay person. 38 C.F.R. § 3.159(a)(1). Thus, the Veteran's personal opinion has little, if any, probative value.

In light of all of the above, the Board is constrained to find the preponderance of the evidence is against the claim on both a presumptive and direct basis. 38 C.F.R. §§ 3.303, 3.307(a), 3.309(a).

Secondary Service Connection

Applicable Legal Standards

A disability which is proximately due to or the result of a service-connected injury or disease shall be service connected. 38 C.F.R. § 3.310. Further, a disability which is aggravated by a service-connected disorder may be service connected to the degree that the aggravation is shown. Allen v. Brown, 7 Vet. App. 439 (1995).

In order to establish entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and (3) medical evidence establishing a nexus between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998) overruled on other grounds; Webster v. Shinseki, 428 Fed. Appx. 976 (Fed. Cir. 2011).

Analysis

As already discussed, the Veteran is diagnosed with MS, and he has been awarded entitlement to service connection for residuals of TBI. Hence, Wallin elements 1 and 2 are shown by the evidence. The earlier discussion of the TBI residuals and the medical examiner's opinion that there are no residuals due to the TBI are incorporated here by reference. In light of the examiner's opinion that there is no causal connection between the Veteran's TBI and his MS and that there are no active residuals, the absence of element 3 is shown by the evidence of record. Hence, there is no factual basis for service connection on a secondary basis.

In reaching this decision the Board considered the doctrine of reasonable doubt. As the preponderance of the evidence is against the Veteran's claim(s), however, the doctrine is not for application. 38 U.S.C.A. § 5107(b); see also Schoolman v. West, 12 Vet. App. 307, 311 (1999).


ORDER

Entitlement to service connection for a skin disorder, to include psoriasis, is denied.

Entitlement to service connection for MS, to include as due to service-connected TBI, is denied.



____________________________________________
JOHN L. PRICHARD
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs