Citation Nr: 1755113 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 13-18 483 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUES

1. Entitlement to service connection for hypertension, to include as due to herbicide agent exposure, and as secondary to service-connected diabetes mellitus and/or coronary artery disease (CAD).

2. Entitlement to service connection for erectile dysfunction, to include as secondary to service-connected diabetes mellitus and/or CAD, or dysthymia disorder.

3. Entitlement to service connection for hypogonadism, to include as secondary to service-connected diabetes mellitus and/or CAD, or dysthymia disorder.

4. Entitlement to service connection for obstructive sleep apnea (OSA), to include as secondary to service-connected diabetes mellitus and/or CAD.

5. Entitlement to an effective date earlier than April 11, 2011 for grant of service connection for dysthymia disorder.

6. Entitlement to an initial rating higher than 20 percent for type 2 diabetes mellitus.
7. Entitlement to an initial rating higher than 30 percent for dysthymia disorder.

8. Entitlement to a total disability rating based on individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Ralph J. Bratch, Attorney


ATTORNEY FOR THE BOARD

W.T. Snyder, Counsel


INTRODUCTION

The Veteran had active duty service in the Army from November 1965 to November 1968, April 1970 to September 1971, and from April 1974 to April 1978; and, in the Navy from September 1989 to January 1994. His Army service included two tours in the Republic of Vietnam (RVN).

This matter comes before the Board of Veterans' Appeals (Board) on appeal from February 2012, March 2013, May 2013, and February 2014 rating decisions by a Department of Veterans Affairs (VA) Regional Office (RO). A February 2012 rating decision denied entitlement to service connection for PTSD, ED, hypogonadism, and determined that new and material evidence was not received to reopen a prior claim of entitlement to service connection for hypertension. A March 2013 rating decision (notification in April 2013) denied entitlement to service connection for OSA. A May 2013 rating decision granted entitlement to service connection for CAD due to presumed exposure to herbicide agents, and for dysthymia disorder as due to the service-connected CAD, and assigned an initial 30-percent rating for each, both effective April 11, 2011. The rating decision also denied a TDIU. A February 2014 rating decision granted entitlement to service connection for diabetes mellitus and assigned an initial rating of 20 percent, effective in May 2013.

The Veteran perfected separate appeals of the above determinations, all of which the Board has merged into one appeal under the Docket Number shown on the title page above.

In a decision dated in April 2015, the Board reopened the hypertension claim and remanded it for additional development and a decision on the merits of the reopened claim. The Board also remanded the initial rating issues for issuance of a Statement of the Case (SOC), see Manlincon v. West, 12 Vet. App. 238 (1999); 38 C.F.R. §§ 19.29, 19.30 (2017); and, remanded the OSA claim for consideration of service connection on a secondary basis due to later grants of service connection as noted above.

The Veteran, through his attorney, cancelled the video hearing scheduled for January 2017 and withdrew all requests for a hearing. (12/30/2016 Third Party Correspondence) Hence, all hearing requests were effectively withdrawn. See 38 C.F.R. § 20.702(e) (2017).

With the exception of the initial rating for the diabetes mellitus, all issues are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

The Veteran's type 2 diabetes mellitus manifests with the need for restricted diet and an oral agent without medical evidence showing the need for regulation of activities.

CONCLUSION OF LAW

The requirements for an initial evaluation higher than 20 percent for type 2 diabetes mellitus are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.159, 4.1, 4.10, 4.119, Diagnostic Code (DC) 7913 (2017).


REASONS AND BASES FOR FINDING AND CONCLUSION

Duty to Notify and Assist

No further notice is required regarding the downstream issue of a higher initial rating for type 2 diabetes mellitus as it stems from the grant of service connection, and no prejudice has been alleged. Additionally, VA has a duty to assist the Veteran in obtaining identified and available evidence needed to substantiate a claim, and as warranted by law, affording VA examinations. See 38 C.F.R. § 3.159(c). The Veteran's service treatment records (STRs), non-VA, and 
VA treatment records, including the VA examination reports are in the claims file. As noted earlier, the Board remanded the case for additional development. Further, in his appellate brief, the Veterans representative waived any issue as concerns further development of additional evidence. (10/10/2017 Correspondence, at 3) 
As such, the Board may proceed to the merits of the issue.

Applicable Law and Regulation

Disability ratings are intended to compensate for impairment in earning capacity due to a service-connected disorder. 38 U.S.C.A. § 1155. Separate diagnostic codes identify the various disabilities. Id.; 38 C.F.R. § 4.27. It is necessary to rate the disability from the point of view of the Veteran working or seeking work, 38 C.F.R. §§ 4.1, 4.2, and to resolve any reasonable doubt regarding the extent of the disability in the Veteran's favor. 38 C.F.R. § 4.3. Evaluations are based on functional impairments which impact a veteran's ability to pursue gainful employment. 38 C.F.R. § 4.10.

If there is a question as to which disability rating to apply to the Veteran's disability, the higher rating will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

In view of the number of atypical instances it is not expected, especially with the more fully described grades of disabilities, that all cases will show all the findings specified. Findings sufficiently characteristic to identify the disease and the disability therefrom, and above all, coordination of rating with impairment of function will, however, be expected in all instances. 38 C.F.R. § 4.21.

In considering the severity of a disability, it is essential to trace the medical history of the Veteran. 38 C.F.R. §§ 4.1, 4.2, 4.41. Consideration of the whole-recorded history is necessary so that a rating may accurately reflect the elements of disability present. 38 C.F.R. § 4.2; see also Peyton v. Derwinski, 1 Vet. App. 282 (1991).

Generally, it is the present level of disability that is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nonetheless, the Veteran is entitled to a staged rating for any part of the initial rating period on appeal where the disability manifested with greater severity. See O'Connell v. Nicholson, 21 Vet. App. 89, 
91-92 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Rating Criteria

A 20-percent rating is provided for diabetes requiring insulin, or oral hypoglycemic agents and a restricted diet; a 40-percent rating is warranted when the diabetes requires insulin, restricted diet, and regulation of activities; a 60-percent rating is warranted when the diabetes requires insulin, restricted diet, and regulation of activities with episodes of ketoacidosis or hypoglycemic reactions requiring one or two hospitalizations per year or twice a month visits to a diabetic care provider, plus complications that would not be compensable if separately evaluated; and, a 
100- percent rating is applicable when the diabetes requires more than one daily injection of insulin, restricted diet, and regulation of activities (avoidance of strenuous occupational and recreational activities), with episodes of ketoacidosis or hypoglycemic reactions requiring at least three hospitalizations per year or weekly visits to a diabetic care provider, plus either progressive loss of weight and strength or complications that would be compensable if separately evaluated. 38 C.F.R. § 4.119, DC 7913.

Discussion

The Board finds that the weight of the competent medical and lay evidence is compellingly against the claim. The Veteran's private physician noted in a May 2013 Disability Benefits Questionnaire (DBQ that the Veteran's diabetes mellitus was managed by an oral agent but no regulation of activities. He did not note any factors that are relevant to rating the disability. (06/03/2013 VA Examination, p. 1) The January 2014 VA examination noted that the diabetes was managed by an oral agent and restricted diet. The examiner noted that regulation of activities was not required, and that the Veteran saw his care provider less than twice a month. (01/31/2014 VA Examination, p. 5-6) There is not any evidence in the outpatient records that contradicts the findings noted in the examinations. For example, the Veteran's private provider noted in November 2013 that the Veteran should follow his exercise plan. (10/18/2017 Medical Treatment-Government Facility, p. 76, 92, 109, 137) The Board also notes the absence of any evidence that the Veteran experienced any unintentional weight loss or progressive loss of strength due to his diabetes.

The Board notes that precedential opinions by the Court of Appeals for Veterans Claims state that medical evidence is required for regulation of activities. See Camacho v. Nicholson, 21 Vet. App. 360, 364 (2007) ("The Court holds that medical evidence is required to support this criterion of a 40% disability rating - regulation of activities."). As just noted, there is no medical evidence to that effect.

The criteria for the 40-percent rating criteria are worded in the conjunctive; hence, that rating is warranted only if each element, including regulation of activities, is present. Camacho, 21 Vet App at 366 (stating that in light of the conjunctive "and" in the criteria for a 40% disability rating under DC 7913, all criteria must be met to establish entitlement to a 40% rating). It is not in dispute that the Veteran requires a restricted diet, insulin and an oral agent to control his diabetes; but these manifestations are insufficient unless medical evidence shows that there is a requirement for regulation of activities. Id. As stated above, the VA examination report notes that regulation of the Veteran's activities was not medically required, and the treatment records do not contradict the examiner's findings. As such, the Veteran does not meet the criteria for a rating higher than 20 percent. 38 C.F.R. §§ 4.1, 4.10, 4.119, DC 7913.

As noted earlier in the discussion of the general rating requirements, the Veteran is entitled to a staged rating for any part of the initial rating period where either of his disabilities manifested at a more severe rate. The Board finds that the pertinent medical and lay evidence of record shows that the Veteran's diabetes mellitus has manifested at the same severity throughout the initial rating period. Hence, a staged rating is not indicated.

In reaching this decision the Board considered the doctrine of reasonable doubt. 
As the preponderance of the evidence is against the Veteran's claim of entitlement to a higher rating, however, the doctrine is not for application. Schoolman v. West, 
12 Vet. App. 307, 311 (1999).


ORDER

An initial rating higher than 20 percent for type 2 diabetes mellitus is denied.


REMAND

The Veteran appealed the assigned initial date of April 11, 2011 for grant of service connection for dysthymia as secondary to service-connected CAD. In as much as the benefit was granted secondarily to the CAD, the RO assigned the effective date as the same as the effective date for the grant of the CAD. See 05/07/2013 Rating Decision-Narrative. The Board notes, however, that VA received the Veteran's claim for entitlement to service connection for PTSD in July 2010. 07/06/2010 VA 21-526b. In general, a psychiatric claim "must [] be considered a claim for any mental disability that may reasonably be encompassed by several factors including: the claimant's description of the claim; the symptoms the claimant describes; and the information the claimant submits or that the Secretary obtains in support of the claim." See Clemons v. Shinseki, 23 Vet. App. 1, 5 (2009). The January 2012 
VA examination report reflects that the examiner determined that the Veteran's symptoms did not meet the DSM criteria for PTSD and entered a diagnosis of dysthymia disorder. The examiner did not, however, render a nexus opinion as concerned the dysthymia. To date, the RO did not request an addendum on that issue. Instead, as noted, service connection was granted on a secondary basis. See 38 C.F.R. § 3.310. If the evidence shows a causal nexus with the Veteran's active service, it may push his effective date back by at least a year. Hence, further medical assessment is needed on that issue. The initial rating of the dysthymia disorder is intertwined with the effective date issue. See 38 C.F.R. § 3.400.

Except for the DBQ submitted by the Veteran's private physician, the examination reports of record reflect that the examiners opined that it was not at least as likely as not that the Veteran's ED and hypogonadism were caused or aggravated by the service-connected diabetes. The Veteran's attorney requests in the Appellate Brief that the issue be remanded for consideration of whether the disorders are due to or aggravated by the Veteran's service-connected dysthymia disorder. The Board notes that the April 2013 VA examination report reflects that the etiology of ED is multifactorial. Among the risk factors noted by the examiner was depression. (04/24/2013 VA Examination, p. 10) The March 2016 examination report reflects that the Veteran reported that his family doctor told him that his ED could be due to stress. The Veteran's report is competent lay evidence. See 38 C.F.R. § 3.159(a)(2). In light of the medical evidence of record, the Board agrees with the attorney that further medical assessment is indicated.

Concerning the OSA, the Veteran's attorney asserts that further medical evaluation is needed to assess whether it is secondary to weight gain caused by the Veteran's service-connected disabilities. The attorney cites the Veteran's and his wife's lay statements that he eats compulsively due to his dysthymia, and the Veteran's reports that his disabilities either preclude or limit his ability to exercise. The Board notes that the medical evidence of record, including the C&P examination reports, indicate that obesity is a risk factor, among others, for OSA. The Board notes further the General Counsel (GC), VA, recently issued a precedential opinion on how the issue of obesity is to be assessed. One of the primary holdings of the opinion is that obesity is not a disability; hence, it cannot be the subject of service connection. VAOPGCPREC No. 1-2017 (Jan. 6, 2017) The GC recognized further, however, that obesity may act as an "intermediate step" between a service-connected disability and a current disability that may be service-connected on a secondary basis under 38 C.F.R. § 3.310(a). Id. Hence, the Board will remand for additional medical assessment, to include under the criteria noted by the GC.

Finally, the Veteran and his wife have submitted lay statements that describe the symptoms of the Veteran's dysthymia. See, e.g., 08/18/2017 VA Form 21-4138. The statements, in part, provide evidence of a worsening of the severity of the disorder since the last examination of record in January 2014. See 38 C.F.R. § 3.159(a)(2). The Veteran is entitled to a new VA examination where there is evidence that the condition has worsened since the last examination. Snuffer v. Gober, 10 Vet. App. 400 (1997); Caffrey v. Brown, 6 Vet. App. 377 (1994); VAOPGCPREC 11-95 (1995). Hence, the Board will remand for a current examination. 

Finally, the Board notes the Veteran's representative's argument that his current hypertension (see, e.g., 03/05/2016 DBQ Cardio hypertension) caused or aggravated by his OSA. Additionally, the Board finds that that the TDIU matter is intertwined with the increased rating and earlier effective date issues regarding the service-connected dysthymic disorder and it will defer consideration at this time.

Accordingly, the case is REMANDED for the following actions:

1. Arrange for a review of the evidence in the claims file up to May 2013, to include the January 2012 VA examination report, by an appropriate mental examiner. Ask the examiner to opine whether there is at least a 
50-percent probability that the evidence up to that date shows that the Veteran's dysthymia is causally connected to his active service?

The examiner is to provide a comprehensive explanation and rationale for all opinions rendered.

2. In addition to the above, arrange for an examination of the Veteran by an appropriate mental examiner to determine the current severity of the dysthymia disorder. 
Additionally, the mental health professional is asked to comment on the effect of the Veteran's service-connected dysthymic disorder on his ability to function in an occupational environment and describe any identified functional limitations.

3. Obtain a medical review of the claims file by an appropriate VA clinician to determine if there is at least a 50-percent probability that the Veteran's ED is caused by his service-connected dysthymia disorder?

If the answer to the above question is, No, is there at least a 50-percent probability that the service-connected dysthymia disorder chronically worsens the ED? If so, please provide a baseline of any aggravation in terms of a percentage.

The examiner is provide a comprehensive explanation and rationale for all opinions rendered.

4. After the above is complete, send the claims file to the examiner who conducted the March 2016 VA OSA examination. 

The examiner is requested to provide an opinion as to the following questions:

(1) whether the service-connected dysthymic disorder and/or diabetes mellitus (or any other service-connected disability) caused the Veteran to become obese/gain weight; (2) if so, whether the obesity/weight gain as a result of the service-connected dysthymic disorder and/or diabetes mellitus was a substantial factor in causing sleep apnea; and (3) whether the sleep apnea would not have occurred but for obesity/weight gain caused by the service-connected dysthymic disorder and/or diabetes mellitus.

In arriving at the opinion on OSA and weight gain/obesity, inform the examiner that all lay evidence must be considered. Inform the examiner further that, under applicable legislation and VA requirements, obesity is not a disease or disability, but it may act as an "intermediate step" between a service-connected disability and a current disability that may be service-connected on a secondary basis. To determine whether any weight gain or obesity is an "intermediate step" between either or all of the Veteran's service-connected disabilities and the OSA, the examiner should consider whether any weight gain or obesity is a result of any or all of the service- connected disabilities was a substantial factor in causing the OSA; and, whether the OSA would not have occurred but for any weight gain/obesity caused by any or all of the service-connected disabilities.

Inform the examiner that a comprehensive rationale and explanation for any and all opinions must be provided.

5. Should the examiner opined that the OSA meet the criteria set forth above, is there at least a 50-percent probability that the OSA causes or aggravates the Veteran's current hypertension? If there is aggravation, please provide a baseline of any aggravation in terms of a percentage.

6. After the above is complete, re-adjudicate the issues on appeal, to include consideration of the TDIU mater. If the decision remains in any way adverse to the Veteran, issue him and his representative a Supplemental SOC (SSOC) and then return the case to the Board, if all is in order.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



______________________________________________
Paul Sorisio
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs