﻿Citation Nr: 19158998
Decision Date: 07/30/19 Archive Date: 07/30/19

DOCKET NO. 17-28 942
DATE: July 30, 2019

ORDER

Entitlement to a rating of 50 percent from July 22, 2014 to May 3, 2016 and a rating of 70 percent, but no more, from May 4, 2016 for post-traumatic stress disorder (PTSD), is granted. 

The reduction in the disability rating for prostate cancer from 100 percent to 60 percent was proper. 

REMANDED

Propriety of the decision to reduce the evaluation of coronary artery disease status (CAD) post stents from 60 percent to 30 percent disabling on September 2, 2014, is remanded.

FINDINGS OF FACT

1. For the period prior to May 4, 2016, occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to PTSD, has not been shown, nor has total occupational and social impairment.

2. For the appeal period after May 4, 2016, the Veteran’s PTSD is productive of occupational and social impairment with deficiencies in most areas but not total occupational and social impairment. 

3. For the entire period on appeal, the Veteran’s prostate cancer has been in remission, with the residuals of prostate cancer predominantly manifested by voiding dysfunction requiring use of an appliance. 

CONCLUSIONS OF LAW

1. For the period from July 22, 204 to May 3, 2016, the criteria for a rating of 50 percent, for PTSD, have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.10, 4.130, Diagnostic Code 9411.

2. For the period from May 4, 2016, the criteria for a rating of 70 percent, for PTSD, have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107; 38 C.F.R. §§ 3.159, 3.321, 4.1, 4.3, 4.10, 4.130, Diagnostic Code 9411. 

3. The rating reduction from 100 percent to 60 percent for prostate cancer residuals was proper. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.105, 4.3, 4.7, 4.115, DC 7528.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from December 1968 to December 1970.

These matters come before the Board of Veterans’ Appeals (Board) on appeal from November 2014, August 2016 and April 2018 rating decisions from the Department of Veterans Affairs (VA) Regional Office (RO). 

In the April 2018 rating decision, the RO increased the Veteran’s rating for his PTSD to 50 percent effective May 4, 2016, and 70 percent effective February 13, 2018. As this was not a complete grant of the benefits sought, the issue remains on appeal.

1. Entitlement to a rating of 50 percent from July 22, 2014 to May 3, 2016 and a rating of 70 percent, but no more, from May 4, 2016 for post-traumatic stress disorder (PTSD), is granted.

The Veteran contends that his PTSD is worse than rated and warrants higher evaluations. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

The Veteran’s PTSD is rated under 38 C.F.R. § 4.130, Diagnostic Code 9411 (the General Rating Formula for Mental Disorders (General Formula)). This regulation provides a 30 percent is warranted when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, recent events.

A 50 percent rating when the evidence shows occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships. 

A 70 percent rating is warranted when the evidence shows occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or PTSD affecting the ability to function independently, appropriately and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships. Id. 

A 100 percent rating is warranted when the evidence shows total occupational and social impairment, due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; memory loss for names of close relatives, own occupation, or own name. Id. 

Ratings are assigned according to the manifestation of particular symptoms. However, the use of the term “such as” in 38 C.F.R. § 4.130 demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002). When determining the appropriate disability evaluation to assign, however, the Board’s “primary consideration” is the Veteran’s symptoms. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 118 (Fed. Cir. 2013). 

Regulations require that where there is a question as to which of two evaluations is to be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In evaluating the evidence in any given appeal, it is the responsibility of the Board to weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307, 310-11 (1999). In this regard, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

Disability evaluations are determined by the application of a schedule of ratings which is based, as far as can practically be determined, on the average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Each service-connected disability is rated on the basis of specific criteria identified by Diagnostic Codes. 38 C.F.R. § 4.27. When rating the Veteran’s service-connected disability, the entire medical history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Separate higher or lower compensable evaluations may be assigned for separate periods of time if such distinct periods are shown by the competent evidence of record during the appeal, a practice known as “staged” ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999). Here, the disability rating has been previously 

The Veteran contends that his PTSD is worse than rated and warrants higher evaluations. See Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The Veteran’s PTSD is rated as 30 percent disabling before May 4, 2016, 50 percent from May 4, 2016 to February 12, 2018 and 70 percent disabling thereafter under 38 C.F.R. § 4.130. 

The record on appeal shows that the Veteran’s PTSD has been productive of symptoms such as depressed mood, anxiety, suspiciousness, chronic sleep impairment, and difficulty in adapting to stressful circumstances. 

A VA examination in August 2014 noted the Veteran’s PTSD symptoms were best summarized as occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress or symptoms controlled by medication. The examiner noted the Veteran’s symptoms included depressed mood, anxiety, suspiciousness, chronic sleep impairment, difficulty in adapting to stressful circumstances, and reckless and destructive behavior. The Veteran denied suicidal ideations. The examiner noted the Veteran reported occasional auditory and visual hallucinations. His insight was intact. His judgment was intact. There was no overt evidence of any cognitive deficits.

A March 2015 VA examination noted the Veteran’s symptoms cause occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, chronic sleep impairment, mild memory loss (such as forgetting names, directions, recent events), impairment of short-term memory forgetting to complete tasks, disturbances of motivation and mood, and persistent hallucinations related to trauma. The examiner noted no hallucinations or delusions during the interview but indicated the Veteran reported that he sees things like shadows or people standing in his doorway sometimes. The Veteran was fully oriented in all spheres, memory and concentration were fair, and insight and judgment were good. The examiner stated, “All in all, Veteran’s symptoms, including sleep issues and depression, appear to be encompassed by the diagnosis of PTSD, the severity of which appears to be about the same as it was in August of 2014.”

At the July 2016 VA examination, the examiner noted suicidal ideation, a depressed mood, anxiety, near-continuous panic or depression affecting his ability to function, chronic sleep impairment, mild memory loss, impairment of short and long-term memory, a flattened affect, disturbances of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty in adapting to stressful circumstances, an inability to establish and maintain effective relationships, and impaired impulse control.

The Veteran was given another VA examination in February 2018. The examiner noted the Veteran’s PTSD was best summarized by occupational and social impairment with reduced reliability and productivity. The Veteran indicated that he continued to care for his 35-year-old Down’s Syndrome son. His wife passed away about 8-9 years prior. He reported he had 5 other adult children that lived in the area. He stated, “We stick together.” He noted he had 12 grandchildren and 2 great-grandchildren. The examiner described his symptoms as depressed mood, anxiety, panic attacks more than once a week, mild memory loss, chronic sleep impairment, flattened affect, disturbances in mood and motivation, difficulty in adapting to stressful circumstances, suicidal ideation, and neglect of personal appearance. The examiner noted evidence of grooming neglect and poor hygiene was evident. The Veteran was cooperative, made adequate eye contact and was easily engaged and engaging. Speech/language was within normal limits with little inflection noted. His mood appeared to be dysthymic and affect was somewhat flat/constricted. No current perceptual disturbances were described or noted. The Veteran reported he sees his dead wife "darting across the house" from time to time. His thought process, content, and associations were generally logical and coherent. The examiner noted current suicidal or homicidal ideations were not endorsed or noted. His insight appeared to be fair; judgment, adequately articulated; abstracting, developmentally intact. No gross cognitive impairment or overt memory issues were noted. The examiner noted the Veteran’s responses appeared to be truthful and without any intent to deceive or mislead. 

From July 22, 2014 to May 4, 2016

For this period on appeal, the Board notes the Veteran consistently reported audio and visual hallucinations, neglect of personal appearance and hygiene, depressed mood, anxiety, suspiciousness, chronic sleep impairment, and disturbances of motivation and mood. The effect of these symptoms is occupational and social impairment with reduced reliability and productivity. Therefore, the Board finds a rating of 50 percent disabling, but no more, is warranted. 

Although an increased rating of 50 percent is warranted, the evidence of record does not reflect symptoms of a severity to approximate the level of occupational and social impairment warranting a 70 percent disability rating or higher. 38 C.F.R. § 4.124a. Although the presence or absence of certain symptoms is not dispositive to the issue of the proper disability rating, the presence or absence of symptoms is useful in determining the severity of the condition. Here, there is no evidence of suicidal ideation during the appeal period, obsessional rituals, abnormal speech, near continuous panic or depression, spatial disorientation, or an inability to maintain effective work and social relationships, or symptoms of similar severity. He was consistently found to have adequate judgment and insight and denied suicidal or homicidal ideations. Importantly, there is no evidence of deficiencies in most areas, including family relations, judgment, or thinking. Further, the Veteran still maintained relationships with family, so as to preclude a finding of a total social impairment. 

Overall, it is evident that the Veteran’s PTSD caused him difficulty in his occupational and social functioning; however, the severity of his social and occupational impairment is contemplated by the 50 percent evaluation. 

Therefore, when considering the history of hallucinations, frequency, severity, and duration of the Veteran’s impairment his disability picture, and when resolving all reasonable doubt in his favor, the Board finds that the evidence shows that his PTSD has approximated the criteria for a 50 percent rating, for this appeal period. See 38 C.F.R. § 4.130; Hart, supra. 

From May 4, 2016

The Court has held that suicidal ideation generally rises to the level contemplated in a 70 percent evaluation. See Bankhead v. Shulkin, 29 Vet. App. 10, 19 (2017) (stating the language of 38 C.F.R. § 4.130 “indicates that the presence of suicidal ideation alone, that is, a veteran’s thoughts of his or her own death or thoughts of engaging in suicide-related behavior, may cause occupational and social impairment in most areas.”). The Court has also held that, “it is the information in a medical opinion, and not the date the medical opinion was provided that is relevant when assigning an effective date.” Tatum v. Shinseki, 24 Vet. App. 139, 145 (2010) (discussing assignment of an effective date for a reduction in disability rating under DC 7528); see also Young v. McDonald, 766 F.3d 1348, 1352-53 (Fed. Cir. 2014). (holding that a medical opinion can diagnose the presence of the condition and identify an earlier onset date based on preexisting symptoms). 

The Board finds the record shows that during this period, the Veteran is entitled to a 70 percent disability rating for his service-connected PTSD. As stated above, a 70 percent rating is warranted when a veteran displays such symptoms as suicidal ideation; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances; and/or the inability to establish and maintain effective relationships, among other symptoms. The evidence of record shows in July 2016 the Veteran reported experiencing suicidal ideation. Furthermore, the Veteran has continued to experience audio and visual hallucination. The Veteran also reported neglect in personal hygiene and appearance.

Therefore, when considering the history of hallucinations, suicidal ideations, frequency, severity, and duration of the Veteran’s impairment his disability picture, and when resolving all reasonable doubt in his favor, the Board finds that the evidence shows that his PTSD has approximated the criteria for a 70 percent rating, for this appeal period. See 38 C.F.R. § 4.130; Hart, supra. 

However, the Board finds that the criteria for a higher rating of 100 percent are not met. In this regard, the Board finds that that the most probative evidence of record does not show his PTSD causes total social and occupational impairment despite the problems with hallucinations in the record. 

In this regard, while the criteria for a 100 percent rating specifically identifies problems with “persistent” delusions or hallucinations, the Board notes the March 2015 VA examiner indicated that although the Veteran reported hallucinating, he did not observe any hallucination or delusions during the interview. Additionally, even though the Veteran reported seeing his deceased wife during VA examination in July 2016 and February 2018, the fact that he indicated it was every so often weighs heavily against finding that his PTSD causes “persistent” delusions or hallucinations. Likewise, the Board finds the fact that the record, including the VA examinations, is negative for a suicide attempt or plan, weighs heavily against finding that the Veteran’s PTSD causes a “persistent” danger of hurting self despite the suicidal ideation reported at the VA examinations. Similarly, the Board finds that the memory loss identified by the above VA examiners does not rise to the level of impairment necessary for a 100 percent rating because his memory loss was characterized by all the VA examiners as “mild.” 

Furthermore, while the criteria a 100 percent rating also specifically identifies problems with “intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene),” the Board finds that the neglect in hygiene seen at the February 2018 VA examination does not amount to this level of impairment. Furthermore, the March 2015 VA examiner reported the Veteran was clean, neatly groomed, and appropriately dressed and the August 2014 VA examiner reported that he was casually dressed and appropriately groomed. The Veteran also appeared to have a good relationship with his children and grandchildren throughout the entire appeal period. 

Lastly, while not exclusive symptomatology, the Board nonetheless finds the fact that the Veteran’s VA examinations as well as his treatment records are uniformly negative for his PTSD causing problems with “gross impairment in thought processes or communication... [and] disorientation to time or place...,” weighs against finding that his PTSD causes total social and occupational impairment.

Simply stated, it is important for the Veteran to understand that not all the evidence in this case supports the 70 percent finding, let alone a higher rating. 

Accordingly, the Board finds that the preponderance of the evidence shows that the Veteran’s PTSD is not manifested by symptomatology that causes total occupational and social impairment at any time during the pendency of the appeal. See Owens v. Brown, 7 Vet. App. 429, 433 (1995) (holding that VA may favor the opinion of one competent medical expert over that of another when decision makers give an adequate statement of reasons and bases). 

Therefore, the Board finds that a 50 percent rating from July 22, 2014 to May 3, 2016 and a rating of 70 percent, but no more, from May 4, 2016 for PTSD is warranted. See 38 C.F.R. § 4.130; Hart, supra. 

2. The reduction in the disability rating for prostate cancer from 100 percent to 60 percent was proper. 

The appeal arises from an August 2016 rating decision which reduced the Veteran’s service-connected prostate cancer from 100 percent disabling to 60 percent disabling effective December 1, 2016. The Veteran submitted a notice of disagreement (NOD) disagreeing with the rating reduction. 

Initially, the Board notes that the claim at issue is not a formal reduction under the substantive provisions of 38 C.F.R. § 3.343 and 38 C.F.R. § 3.344 because the provisions of 38 C.F.R. § 4.115b, DC 7528 contain a temporal element for continuance of a 100 percent rating for prostate cancer residuals. Therefore, the AOJ’s action was not a “rating reduction” as that term in commonly understood. See Tatum v. Shinseki, 24 Vet. App. 139, 143 (2010); Rossiello v. Principi, 3 Vet. App. 430 (1992); 38 C.F.R. § 4.115b, DC 7528. Thus, in this case, the Board must only determine if the procedural requirements of 38 C.F.R. § 3.105 (e) were met and if the reduction was by operation of law under DC 7528.

First, as the rating action that implemented the ‘reduction’ did not change the Veteran’s overall disability rating, a reduction of compensation payments did not occur, and the procedural safeguards of 38 C.F.R. § 3.105 (e) do not apply. See VAOPGCPREC 71-91 (Nov. 7, 1991); Stelzel v. Mansfield, 508 F.3d 1345, 1347- 49.

Second, and finally, the Board concludes the reduction was by operation of law under DC 7528. In other words, there is no evidentiary basis for continuance of the 100 percent rating for prostate cancer under DC 7528 after December 1, 2016. 38 C.F.R. § 4.115b, DC 7528.

Under 38 C.F.R. § 4.115b, DC 7528, a 100 percent rating is assigned for malignant neoplasms of the genitourinary system. The Note following DC 7528 provides that following the cessation of surgical, x-ray, antineoplastic chemotherapy, or other therapeutic procedure, the rating of 100 percent shall continue with a mandatory VA examination at the expiration of six months. If there has been no local reoccurrence or metastasis, the disability is to be rated on residuals as voiding dysfunction or renal dysfunction, whichever is predominant.

A VA examination was conducted in March 2016. The examiner indicated the Veteran’s cancer was in remission. The examination also showed the Veteran’s genitourinary residual was that of a voiding dysfunction requiring use of an appliance. The Veteran was not shown to have active malignancy or otherwise undergoing surgical, X-ray, antineoplastic chemotherapy, or other therapeutic procedure. 

The Veteran was given another VA examination in August 2017 which indicated the Veteran’s prostate cancer was active. The examiner noted the Veteran indicated that he was receiving chemotherapy, and he was getting an infusion every third Friday. The examiner also noted outside records were not available. As the examiner did not have any outside records, the opinion was based mostly on the statements of the Veteran. Moreover, the opinion was contradictory to the findings of the March 2016 VA examination. As a consequence, the RO requested clarification.

The Veteran was then afforded another VA examination in February 2018. The examiner opined that the Veteran prostate cancer was in remission. The examiner noted the Veteran continued to have a voiding dysfunction that requires the use of an appliance. The Veteran was not shown to have active malignancy or otherwise undergoing surgical, X-ray, antineoplastic chemotherapy, or other therapeutic procedure. The examiner noted the Veteran was being treated for bladder cancer and not prostate cancer. 

Based on the evidence, a rating in excess of 60 percent is not appropriate in this case. The RO properly reduced his rating from 100 percent since the Veteran is no longer receiving any surgical, X-ray, chemotherapy or other therapeutic procedure for prostate cancer.

As the Veteran is in receipt of the maximum disability rating under DC 7528 for voiding dysfunction, he is not entitled to a rating greater than 60 percent. There is no reasonable doubt to be resolved in the Veteran’s favor and the appeal is therefore denied

REASONS FOR REMAND

1. Propriety of the decision to reduce the evaluation of coronary artery disease (CAD) status post stents from 60 percent to 30 percent disabling on September 2, 2014, is remanded.

The most recent VA examination concerning this disability was in September 2014, nearly five years ago, and the Veteran appears to be receiving ongoing treatment. Accordingly, a remand is necessary to arrange for a new VA examination to determine the current severity of the Veteran’s CAD. 38 C.F.R. § 3.327; Snuffer v. Gober, 10 Vet. App. 400, 403 (1997). Any relevant records of treatment should be obtained, and the Veteran examined for VA purposes.

The matter is REMANDED for the following action:

1. Obtain any outstanding treatment records and associate with the claims file. 

2. After the above development has been completed, schedule the Veteran for a VA examination to ascertain the current severity and manifestations of his service-connected CAD. Any and all studies, tests, and evaluations deemed necessary by the examiner should be performed. The examiner is requested to review all pertinent records associated with the claims file and to comment on the severity of the Veteran’s service-connected CAD. The examiner should report all signs and symptoms necessary for rating the Veteran’s disability under the applicable criteria, 38 C.F.R. § 4.104, Diagnostic Code 7005. The record and a copy of this remand must be made available and reviewed by the examiner in conjunction with the examination. 

A rationale for all requested opinions should be provided. If the examiner cannot provide an opinion without resorting to mere speculation, he or she should provide a complete explanation stating why this is so. In so doing, the examiner should explain whether the inability to provide a more definitive opinion is the result of a need for additional information, or that he or she has exhausted the limits of current medical knowledge in the 

 

medical community at large and not those of the particular examiner. 

 

L. M. BARNARD

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Department of Veterans Affairs

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.