Mary S. SCHOOLMAN, Appellant,

v.

Togo D. WEST, Jr., Secretary of
Veterans Affairs, Appellee.

No. 97–1494.

United States Court of Appeals
for Veterans Claims.

April 2, 1999.

Toni K. Allen, Washington, DC, was on the pleading for appellant.

Leigh A. Bradley, General Counsel; Ron Garvin, Assistant General Counsel; and Jacqueline M. Sims, Acting Deputy Assistant General Counsel, Washington, DC, were on the pleadings for appellee.

Before FARLEY, HOLDAWAY, and STEINBERG, Judges.

FARLEY, Judge:

The appellant, Mary S. Schoolman, appeals through counsel a May 20, 1997, Board of Veterans' Appeals (Board or BVA) decision that denied an effective date prior to September 1967 for an award of dependency and indemnity compensation (DIC) benefits. On November 9, 1998, the Board's decision was affirmed by a single judge in a memorandum decision. The appellant filed a motion for a panel review of that decision; the Court will construe that motion as one seeking a panel decision pursuant to Rule 35(b) of this Court's Rules of Practice and Procedure. On December 17, 1998, the Court ordered the Secretary to respond to the appellant's motion. In order to give appropriate consideration to the appellant's arguments, the Court will grant the appellant's motion, the single-judge memorandum decision is hereby withdrawn, and this opinion is issued in its stead. For the following reasons, the Court will affirm the decision of the Board.

## I. FACTUAL BACKGROUND

The appellant is the surviving spouse of the veteran, Irving M. Schoolman. R. at 36. The veteran served on active duty from March 1944 to September 1945. R. at 11. He died on July 14, 1961. R. at 14. On July 26, 1961, the VA Insurance Accounts Division wrote to the appellant at her address of record, 888 Grand Concourse, New York 51, N.Y. (888 Grand Concourse), enclosing instructions for her to file a claim if she wished to apply for the proceeds of the veteran's Government Life Insurance. R. at 24. The appellant submitted a claim dated August 2, 1961, for VA life insurance or indemnity. R. at 31. The address provided by the appellant at that time was the 888 Grand Concourse address. *Id.* Subsequently, VA wrote to the appellant on August 3, 1961, at the same address instructing her that she may be entitled to DIC benefits. R. at 28. Enclosed was VA Form 21–534 (Form 21–534) to be completed by the appellant should she wish to file a claim for benefits. *Id.* On August 11, 1961, VA wrote to the appellant again at the same address notifying her that settlement of her insurance claim had been authorized. R. at 26.

Thereafter, the appellant completed VA Form 21–534 on October 17, 1973. R. at 36–40. In an attachment to the completed Form 21–534, the appellant stated that she had "made no request for investigation at the time of [the veteran's] death as [she] did not seek financial help and worked for several years.... However, the situation is different now." R. at 40. The American Legion, acting as the appellant's representative, forwarded this completed form and attachment to VA on November 5, 1973. R. at 43. On August 27, 1974, the appellant was awarded DIC benefits effective November 6, 1973, the date of VA's receipt of her initial application. R. 123.

On June 7, 1993, the appellant submitted a Statement in Support of Claim requesting that her claim for DIC benefits be reopened and that pension benefits be awarded retroactively to the date of her husband's death. R. at 132. The appellant stated that, after her husband's death, she tried to contact the Veterans of Foreign Wars organization (VFW) in New York City (where she had lived at the time) but that she was unable to get any information or advice as to how she could determine whether she was entitled to pension benefits. *Id.* Thereafter, the appellant acknowledges that she dropped the entire matter as she perceived it to be futile. *Id.* On September 27, 1993, citing to 38 C.F.R. § 3.400(c)(2) and stating that the appellant's claim had not been received within one year after the date of the veteran's death, VA denied the appellant's claim for retroactive benefits. R. at 135. VA pointed out that, pursuant to the regulation, the entitlement date would be the date of receipt of the appellant's claim. *Id.* The appellant submitted a Notice of Disagreement (NOD)

dated October 5, 1993, requesting that VA furnish to her a Statement of the Case (SOC). R. at 137. VA issued an SOC on December 15, 1993. R. at 142–44. *Id.*

On January 10, 1994, the appellant submitted a VA Form 9, Appeal to the Board of Veterans' Appeals, in which she stated that she had "never been advised by the V.A. to submit a claim for benefits" and that she had never received a copy of the VA letter dated August 3, 1961. R. at 146. Further, she stated "unequivocally that [she] *NEVER* received any information to submit a claim for benefits after [her] husband's death, from the V.A. or anyone else" and that she had initiated a claim after her husband's death but was given no help by the Army or VA. *Id.* (emphasis in original). A hearing was conducted on April 29, 1994, in which the appellant testified under oath that she had not received the August 3, 1961, letter until December 1993 when she requested copies of all correspondence relating to her case. R. at 153. The appellant further testified that she was living at the 888 Grand Concourse address at the time of the veteran's death and remained at that address until she relocated to Washington, D.C., in 1971. R. at 154, 161. The appellant also testified that, after the veteran's death, she sought assistance from the Jewish War Veterans Organization but that she did not contact VA about benefits. R. at 157.

In a February 27, 1996, BVA decision, the Board recognized that the appellant had provided sworn testimony in the hearing of April 29, 1994, that indicated that she had applied for benefits from the Social Security Administration (SSA) prior to November 1973. R. at 180. The Board determined that pursuant to 38 U.S.C. § 5105 and 38 C.F.R. § 3.153 (1998) the appellant's application for benefits filed with the SSA would be considered to be a claim for VA death benefits and be considered to have been received by VA on the date of receipt by the SSA. *Id.* Accordingly, the BVA remanded the appellant's claim to the regional office (RO) to ascertain the date on which the appellant first filed her claim for SSA benefits. Based upon a March 1996 request for information, the SSA informed VA that the appellant initially applied for SSA benefits in September 1967. R. at 184. In September 1996, the RO granted an effective date of September 1967 based upon the provisions of 38 U.S.C. § 5105 and 38 C.F.R. § 3.153. R. 205–07. The RO's decision resulted in a lump-sum payment of $11,418.18. R. at 209.

The appellant filed an NOD on October 3, 1996, contending that the effective date of the award of her DIC benefits should correspond with the date of her husband's death. R. 214. The appellant reiterated that she had never received the August 3, 1961, letter from VA and that "the fact that [she] contacted the Jewish War Veterans in August 1961 should prove that [she] was trying to get the necessary information regarding a possible pension." R. at 214. In the decision on appeal, the Board, relying on 38 U.S.C. § 5110(a)(d)(1) and 38 C.F.R. § 3.400(c)(2), concluded that an effective date prior to the date of receipt of the appellant's claim in September 1967 could not be awarded. R. at 7. In addition, the Board held that, despite the appellant's contention that she had never received the original August 3, 1961, letter from VA informing her that she may be entitled to DIC benefits, there was insufficient evidence to rebut the presumption of administrative regularity. R. 6. This appeal followed.

In its November 8, 1998, single-judge memorandum decision, the Court affirmed the Board's decision. The Court determined that the Board's granting of an effective date for DIC benefits of September 1, 1967, the date the appellant had filed a claim for SSA benefits, was not clearly erroneous. Further, the Court concluded that there was a plausible basis in the record for the Board's decision that the appellant had not rebutted the presumption of regularity in the administrative process. Finally, the Court indicated that the benefit of the doubt doctrine was inapplicable in this case because the evidence of record preponderated against the appellant's claim and was not in equipoise.

## II. ANALYSIS

### A. Claim for Earlier Effective Date

The "[r]esolution of the question of whether the Board accurately determined

the effective date requires the Court to decide whether the Board erred in its fact finding." *Scott v. Brown,* 7 Vet.App. 184, 188 (1994) (quoting *Quarles v. Derwinski,* 3 Vet. App. 129, 135 (1992)). This Court reviews the Board's factual findings under a "clearly erroneous" standard. *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990). Under this standard, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact." *Id.* If there is a plausible basis in the record for the BVA's factual determinations, this Court cannot overturn them. *Id.*

■ The effective date of an award for DIC benefits is governed by 38 U.S.C. § 5110(a), which states:

> Unless specifically provided otherwise in this chapter, the effective date of an award based on an original claim ... shall be fixed in accordance with the facts found, but shall not be earlier than the date of receipt of the application therefor.

Subsection (d) further provides that the effective date of an award of DIC benefits "for which application is received within one year from the date of death shall be the first day of the month in which the death occurred." 38 U.S.C. § 5110(d)(1); *see also* 38 C.F.R. § 3.400(c)(2).

There is no dispute as to the operative facts. The veteran died on July 14, 1961. R. at 14. Thereafter, the appellant did not file a claim for DIC benefits until 1973. Nevertheless, the Board granted an effective date of September 1, 1967, the date the appellant filed a claim for SSA benefits. R. at 7. (*See* 38 C.F.R. § 3.153.) There is a plausible basis in the record for the Board's determination, and that decision is thus not clearly erroneous.

### B. Presumption of Regularity of the Administrative Process

On appeal, the appellant argues that the Board's denial of DIC benefits retroactive to the date of the veteran's death was erroneous because, she asserts, she never received an August 3, 1961, letter from VA instructing her to complete Form 21–534 should she wish to seek DIC benefits. Pretermitting the question of whether there even was a duty on the part of the Secretary to notify the appellant, a review of the record on appeal (ROA) reveals no evidence that the August 3, 1961, letter was not mailed to the appellant's residence at 888 Grand Concourse or that the letter was returned to VA as undeliverable. Not only does the appellant acknowledge that the 888 Grand Concourse address was her residence until 1971 when she relocated to Washington, D.C. (R. at 160), but she confirms that she received other VA correspondence directed to that address. Moreover, the ROA contains assertions made by the appellant that she made a deliberate choice not to seek financial assistance at the time of the veteran's death. R. at 40, 157.

■ It is well settled that "clear evidence to the contrary" is required to rebut the presumption of regularity, i.e., the presumption that notice was sent in the regular course of government action. *YT v. Brown,* 9 Vet.App. 195, 199 (1996); *see also Mason v. Brown,* 8 Vet.App. 44, 53 (1995); *Mindenhall v. Brown,* 7 Vet.App. 271, 274 (1994); *Ashley v. Derwinski,* 2 Vet.App. 62, 64–65, *aff'd on reconsideration,* 2 Vet.App. 307 (1992). Moreover, VA need mail notice only to the latest address of record in order for this presumption to attach. *Mindenhall,* 7 Vet. App. at 274; *see also Saylock v. Derwinski,* 3 Vet.App. 394, 395 (1992). The appellant's contentions amount simply to repeated assertions that she did not receive the August 3, 1961, letter and the enclosed Form 21–534. However, an appellant's statement of nonreceipt does not by itself constitute the type of clear evidence needed to rebut the presumption of regularity that the notice was sent. *YT,* 9 Vet.App. at 199; *see also Mindenhall,* 7 Vet.App. at 274; *Ashley,* 2 Vet.App. at 65.

■ Once the Board determined that the appellant's testimony of nonreceipt was not the clear evidence to the contrary required to rebut the presumption of regularity of the mailing of the 1961 letter, the presumption remained and the Board, as the finder of fact, was required to weigh all of the evidence and facts, including the appellant's testimony of nonreceipt, the evidence that the letter was not returned as undeliverable, the presumption that the 1961 notice was sent,

and any other evidence relating to the mailing and receipt of the 1961 letter. *See* R. at 5; *see also In re Longardner*, 855 F.2d 455, 459 (7th Cir.1988) (where notice was properly addressed, stamped, and mailed, the presumption of regularity adheres and the creditor's "denial of receipt alone does not rebut the presumption, but merely creates a question of fact"). The Board found that the preponderance of the evidence was against the appellant's claim that she did not receive the 1961 letter. The Court concludes that there was a plausible basis in the record for this factual determination and that it thus is not clearly erroneous. *See Scott, Quarles,* and *Gilbert,* all *supra.*

The above notwithstanding, the appellant argues that the presumption of regularity was rebutted because of the benefit of the doubt doctrine of 38 U.S.C. § 5107(b). We disagree. The statute pertaining to the benefit of the doubt doctrine dictates that the application of this doctrine is prompted

> [w]hen, *after consideration of all evidence and material of record* in a case before the Department with respect to benefits under laws administered by the Secretary, there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter....

38 U.S.C. § 5107(b) (emphasis added). The regulation implementing the statute provides, inter alia:

> When, after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding service, origin, the degree of disability, or any other point, such doubt will be resolved in favor of the claimant. By reasonable doubt is meant one which exists because of an approximate balance of positive and negative evidence which does not satisfactorily prove or disprove a claim. It is a substantial doubt and one within the range of probability as distinguished from pure speculation or remote possibility.

38 C.F.R. § 3.102 (1998).

Thus, even if the Board had found the evidence to be in equipoise, i.e., an approximate balance of evidence as to the mailing, the Court would still have to reject the appellant's argument which, in essence, invites the Court to hold that evidence in equipoise somehow is magically transformed into "clear evidence to the contrary" solely by virtue of the benefit of the doubt doctrine. As both the statute and the regulation make clear, the benefit of the doubt doctrine of § 5107(b) does not apply until "*after* consideration of all evidence and material of record." *Gilbert,* 1 Vet.App. at 55 (emphasis added) (quoting 38 U.S.C. § 3007(b), now 38 U.S.C. § 5107(b)). Nor does it come into play unless the evidence of record is in equipoise. *Hayes v. Brown,* 5 Vet.App. 60, 69–70 (1993). It has no application in those cases where the preponderance of the evidence is against the appellant's claim. *Id.* Because there is a plausible basis in the record for the Board's decision that the preponderance of the evidence was against the appellant's claim, the benefit of the doubt doctrine does not apply.

Finally, the appellant's reliance upon Rule 301 of the Federal Rules of Evidence is misplaced. Although the Court has, on occasion, looked to the Federal Rules of Evidence as a source of guidance for resolving a relevant point of law, *see, e.g., Thurber v. Brown,* 5 Vet.App. 119, 126 (1993), those Rules "do not generally apply to proceedings before the [regional office], the Board [of Veterans' Appeals], or this Court." *Cacalda v. Brown,* 9 Vet.App. 261, 264 (1996).

## III. CONCLUSION

Upon consideration of the above, the Court holds that the appellant has not demonstrated that the BVA committed either factual or legal error that requires reversal or remand. *See* 38 U.S.C. §§ 5107, 7104(d), 7261; *Gilbert,* 1 Vet.App. at 52–53. The BVA decision is AFFIRMED.