# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-3687

PATRICIA L. ROMERO, APPELLANT,

V.

DAT P. TRAN,
ACTING SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued October 15, 2020                                    Decided January 25, 2021)

*Zachary M. Stolz*, with whom *Alyse E. Galoski* was on the brief, both of Providence, Rhode Island, for the appellant.

*Ronen Z. Morris*, with whom *William A. Hudson, Jr.*, Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; *Sarah W. Fusina*, Deputy Chief Counsel; and *Margaret E. Sorrenti*, Appellate Attorney, were on the brief, all of Washington, D.C., for the appellee.

Before ALLEN, MEREDITH, and FALVEY, *Judges*.

ALLEN, *Judge*: This case is about the presumption of regularity—how it may be triggered as well as rebutted. Courts often cite *United States v. Chemical Foundation, Inc.*,[1] for the Supreme Court's statement of the presumption: "The presumption of regularity supports the official acts of public officers, and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."[2] The presumption of regularity reflects Federal courts' deference to the other branches of Government and efficiency concerns. But it is not a carte blanche. After all, the presumption of regularity is rebuttable.[3]

In the May 9, 2019, decision we consider now on appeal, the Board of Veterans' Appeals concluded that appellant had failed to rebut the presumption of regularity by clear evidence and applied the presumption to find that VA had mailed a Statement of the Case (SOC) to appellant's counsel, the firm of Chisholm Chisholm & Kilpatrick (CCK). On appeal appellant argues that the

---

[1] 272 U.S. 1 (1926).

[2] *Id.* at 14-15.

[3] *See Ashley v. Derwinski* (*Ashley I*), 2 Vet.App. 62, 65 (1992), *amended* on *reconsideration*, 2 Vet.App. 307 (1992) (amended May 28, 1992).

Board erred because the presumption never attached, or, in the alternative, because she had successfully rebutted it. Both are questions of law.[4] For his part, the Secretary insists no error occurred here.

On November 20, 2020, the Court issued a panel decision setting aside the Board's decision and remanding the case for further proceedings. On December 11, 2020, the Secretary sought reconsideration, because he took issue with the Court's holding that rebuttal evidence need not be claimant specific and its corresponding conclusion that the Board had erred as to rebuttal, as well as the Court's conclusion that a remand for the Secretary to prove that the SOC was actually mailed would be "pointless" given his concession at oral argument that he could not prove actual mailing "conclusively."

We will grant the motion for reconsideration, withdraw our November 20, 2020, decision, and issue this decision in its stead clarifying why we conclude a remand for the Secretary to prove that the SOC was actually mailed would be "pointless." We also make clear that in situations in which the presumption of regularity has been rebutted, the Secretary's burden is to establish actual mailing or receipt by a preponderance of the evidence. Otherwise our decision remains the same.

We disagree with appellant on attachment but agree with her on rebuttal. We hold as a matter of law that in this case the existence of VA's legal duty to mail an SOC to a claimant's representative was enough for the presumption to attach, and no further evidence was required to trigger the presumption. Though the Board correctly determined that the presumption applied here, the Board erred in evaluating the sufficiency of appellant's rebuttal evidence. We also hold as a matter of law that in this case appellant rebutted the presumption based on the Board's favorable factual finding that she had produced substantial evidence of a widespread problem with VA not mailing correspondence plus CCK's statement of nonreceipt. Therefore, the Court will set aside the May 9, 2019, Board decision and remand this matter for further proceedings consistent with this decision. On remand, the Board must make a new timeliness finding based on a correct understanding of the law. We stress that we do not hold that VA's mailing practices are irregular as a broad, categorical matter. Rather, we conclude that appellant in this case rebutted that presumption based on the evidence she submitted and the Board's factual determinations about that evidence.

---

[4] *Crumlich v. Wilkie*, 31 Vet.App. 194, 205 (2019).

## I. FACTS AND PROCEDURAL HISTORY

Appellant Patricia Romero served honorably in the United States Army from January 1970 to April 1971.[5] In June 2016 she sought an increased disability rating for her service-connected PTSD, including entitlement to a total disability rating based on individual unemployability (TDIU), and service connection for several other conditions.[6] The regional office (RO) denied each claim.[7] Appellant then appointed her current representative, CCK,[8] and filed a timely Notice of Disagreement (NOD) as to all the denied claims.[9]

In an August 16, 2017, SOC, the RO continued to deny appellant's claim for an increased disability rating for PTSD, as well as entitlement to TDIU and service connection for the other conditions.[10] CCK asserts that VA failed to send CCK the SOC.[11]

On November 2, 2017, while reviewing appellant's file in the Veterans Benefits Management System, an online database that contains veterans' claims files, CCK became aware of the August 2017 SOC.[12] The next day, CCK notified VA's Evidence Intake Center that VA had failed to send CCK the SOC, arguing that VA was not entitled to the presumption of regularity and alleging ongoing problems with VA's mailing system that called into question its regularity.[13] On November 6, 2017, 4 days after learning about the SOC, CCK submitted a VA Form 9 Substantive Appeal (merits Substantive Appeal) on appellant's behalf as to all the issues listed in the SOC.[14] CCK also argued that the appeal was timely because VA had failed to notify it of the SOC.[15] CCK repeated its assertion that VA's mailing practices are irregular.

---

[5] Record (R.) at 3160.

[6] R. at 3124-28, 3137-39. Because this appeal does not concern the merits of appellant's claims, we do not detail them here.

[7] R. at 836-37.

[8] R. at 776-78.

[9] R. at 760-71.

[10] R. at 687-737.

[11] R. at 336.

[12] *See* R. at 333.

[13] R. at 336.

[14] R. at 326-34.

[15] R. at 333.

In a December 7, 2017, letter, VA found appellant's Substantive Appeal untimely.[16] A week later, CCK filed an NOD, arguing for the timeliness of appellant's Substantive Appeal.[17] The RO issued an SOC on the timeliness issue later that month,[18] and CCK perfected an appeal on that question.[19]

In support of the argument that appellant's merits Substantive Appeal was timely, CCK submitted three documents. The first document was a 2017 U.S. Government Accountability Office (GAO) report about VA, entitled "Actions Needed to More Effectively Manage Outgoing Mail."[20] "GAO was asked to review VA's mail management practices" because "VA's reported mail volume and costs . . . are among the highest in the federal government."[21] CCK highlighted two sentences from the report: (1) "'VA is not managing its mail program effectively, as it lacks key elements of an effective mail management program'"; and (2) "'VA is unable to determine the extent to which its mail operations are efficient and effective.'"[22]

Second, CCK submitted a sworn statement by Robert Chisholm, Esq., of CCK (the Chisholm affidavit).[23] Mr. Chisholm said that he was aware of at least 863 instances between July 2015 and May 2018 where VA failed to mail him a copy of a case-related document.[24] He explained that his office had exchanged emails and phone calls with a number of Veterans Benefits Administration (VBA) employees about mailing issues.[25] Mr. Chisholm said that, during a conference call, two VBA employees, one of whom was the deputy director of the Office of Business Process Integration, "acknowledged VA's continued failure to consistently mail representatives copies of their claimants' decisional documents as required by 38 U.S.C. § 5104(a)

---

[16] R. at 281-85.

[17] R. at 277.

[18] R. at 232-47.

[19] R. at 224-27.

[20] R. at 159-77.

[21] R. at 159.

[22] R. at 225 (quoting R. at 167, 171); *see also* R. at 190 ¶ 4.

[23] R. at 190-95.

[24] R. at 190 ¶ 3.

[25] R. at 192-93 ¶¶ 11-21.

4

and 38 C.F.R. § 3.103(b)(1), and as reported by CCK and other veterans' representatives."[26] VA never refuted Mr. Chisholm's account of the conversation.

Third, CCK submitted a sworn statement (the Rauber affidavit) from Diane Rauber, executive director of the National Organization of Veterans' Advocates, Inc. (NOVA).[27] In her statement Ms. Rauber described NOVA's efforts to inform VA of mailing failures.[28] Through communications with representatives accredited to represent claimants before VA, in late 2017 she became aware of 272 examples of VA mailing failures.[29]

In its May 9, 2019, decision, the Board denied appellant's appeal.[30] The Board found that (1) on August 16, 2017, VA mailed an SOC to appellant and CCK; (2) the SOC was addressed to both appellant's and CCK's correct addresses; (3) appellant filed her merits Substantive Appeal on November 6, 2017; and (4) the evidence she submitted was "not clear evidence sufficient to rebut the presumption that the August 16, 2017[,] SOC was mailed to" appellant and CCK.[31] Therefore, the Board concluded that appellant's merits Substantive Appeal was untimely.[32] The Board walked through all the evidence CCK had submitted, including the statement in the Chisholm affidavit that VBA employees had acknowledged VA's mailing failures.[33]

The Board then analyzed whether appellant had rebutted the presumption of regularity.[34] "[D]espite the substantial evidence that [CCK] has provided that reflects a widespread problem with VA not mailing correspondence," the Board said, "there is no clear evidence that VA did not mail the actual August 2017 SOC to [appellant] or [CCK] to the addresses listed on the SOC."[35] The Board reasoned that CCK's statement of nonreceipt alone was not sufficient to rebut the

---

[26] R. at 192 ¶ 11, 193 ¶ 21.

[27] R. at 76-77.

[28] R. at 76 ¶ 2.

[29] R. at 77 ¶ 3.b.

[30] R. at 9-14.

[31] R. at 9.

[32] R. at 10.

[33] R. at 11-12.

[34] R. at 12-14.

[35] R. at 12.

presumption.[36] As for other evidence, the Board reasoned that this Court has "consistently indicated that evidence that clearly rebuts the presumption should be specific to the facts of the case at hand."[37] But "[h]ere, the Veteran has not submitted any evidence specific to this Veteran's file or the mailing practices as applicable to the handling of this Veteran's case."[38] Rather, the evidence "discusses general VA mailing deficiencies and does not directly discuss the August 16, 2017[,] SOC."[39] The Board noted that nothing in the record suggested that VA had admitted to failing to mail the August 16, 2017, SOC.[40] "At most VA acknowledged—not in the context of discussing this Veteran's case—a widespread problem with mailing . . . ."[41] The Board concluded that the evidence "[did] not *clearly* rebut the presumption that the August 16, 2017[,] SOC was mailed" because there was "little, if any, evidence" of a failure to mail the August 16, 2017, SOC.[42] Thus, the Board concluded that the presumption of regularity still applied, the August 2017 SOC was properly mailed, and the merits Substantive Appeal was not timely.[43] This timely appeal, over which we have jurisdiction,[44] followed.

## II. PRESUMPTION OF REGULARITY

At bottom, the parties' positions reflect disagreement not simply about how the presumption of regularity operates, but about what it is. To answer the questions of law this appeal presents, therefore, we start by looking at the presumption's origins, predicates, and rationales. From there, we summarize how courts proceed when the presumption of regularity applies in a case.

---

[36] R. at 12-13.

[37] R. at 13 (citing *Clarke v. Nicholson*, 21 Vet.App. 130, 135 (2007); *YT v. Brown*, 9 Vet.App. 195, 199 (1996); *Chute v. Derwinski*, 1 Vet.App. 352, 353 (1991) (per curiam order); *Schoolman v. West*, 12 Vet.App. 307, 311 (1999)).

[38] *Id.* (emphasis in original).

[39] *Id.*

[40] *Id.*

[41] *Id.*

[42] *Id.* (emphasis in original).

[43] R. at 14.

[44] *See* 38 U.S.C. §§ 7252(a), 7266(a).

The presumption of regularity's origins are not entirely clear from or well explained in caselaw.[45] A deep dive, though, reveals that, like so many other American legal concepts, the now so-called presumption of regularity is rooted in English common law.[46] The presumption of governmental or administrative regularity derives from a much broader, more widely applicable principle, as stated simply by an English court in *The King v. Hawkins*: "[T]he presumption, that every man has conformed to the law, shall stand till something shall appear to shake that presumption."[47]

In 1827, the U.S. Supreme Court restated this broad principle in *President of the Bank of U.S. v. Dandridge*:

> [T]he law itself, for the purpose of strengthening the infirmity of evidence, and upholding transactions intimately connected with the public peace, and the security of private property, indulges its own presumptions. It presumes that every man, in his private and official character, does his duty, until the contrary is proved; it will presume that all things are rightly done, unless the circumstances of the case overturn this presumption, according to the maxim, *omnia presumuntur rite et solemnitur esse acta, donec probetur in contrarium*.[48] Thus, it will presume that a man acting in a public office has been rightly appointed; that entries found in public books have been made by the proper officer; that, upon proof of title, matters collateral to that title shall be deemed to have been done; as, for instance, if a grant or feoffment has been declared on, attornment will be intended, and that deeds and grants have been accepted, which are manifestly for the benefit of the party.[49]

---

[45] *See* Note, *The Presumption of Regularity in Judicial Review of the Executive Branch*, 131 HARV. L. REV. 2431, 2431 (2018) (stating that "the doctrine's operation and foundations are little understood"); Carissa Byrne Hessick, *A Bit of History on the Presumption of Regularity*, PRAWFSBLAWG (Jan. 14, 2019, 7:06 AM), https://prawfsblawg.blogs.com/prawfsblawg/2019/01/a-bit-of-history-on-the-presumption-of-regularity.html (exploring the origins of the presumption in U.S. caselaw); *see also* Andrew Hessick, *Carissa Hessick on the Presumption of Regularity*, YALE J. ON REG.: NOTICE & COMMENT (Jan. 14, 2019) (citing Carissa Hessick's blog post), https://www.yalejreg.com/nc/carissa-hessick-on-the-presumption-of-regularity/ ("Despite its widespread application, the source of the presumption is less clear.").

[46] *See President of the Bank of U.S. v. Dandridge*, 25 U.S. 64, 69 n.b (1827) (citing *R. v. Hawkins*, 103 E.R. 755, 757-58 (1808) (citing more English common law) ("[T]he presumption, that every man has conformed to the law, shall stand till something shall appear to shake that presumption.")); *see also R.H. Stearns Co. of Bos. v. United States*, 291 U.S. 54, 62-63 (1934) (citing *Dandridge*, 25 U.S. at 70, for the presumption of regularity).

[47] 103 E.R. at 757-58.

[48] The maxim means "[a]ll things are presumed to have been done rightly and with due formality unless it is proved to the contrary." Carissa Hessick, *supra* note 45.

[49] 25 U.S. at 69-70 (footnote omitted).

To be sure, the current presumption's exact bounds and nature are debatable.[50] But we think it fair to say that, especially as it was stated in these early cases, "[t]he presumption perhaps is less a rule of evidence than a general working principle"[51] or "a collection of deference doctrines."[52]

That distinction matters particularly when we consider what predicate triggers the presumption of regularity. Evidentiary presumptions typically apply only upon a showing of predicate evidence.[53] But the presumption of regularity is different; *either* evidence or law can trigger it. Certainly, "[a]cts done by a public officer 'which presuppose the existence of other acts to make them legally operative, are presumptive proofs of the latter.'"[54] But also, as the Federal Circuit has recognized, the presumption of regularity may be "premised upon independent legal authority rather than on evidentiary findings."[55] Therefore, if law imposes a relevant, official duty on an official, we presume that the official has properly performed that duty, unless there is evidence to the contrary.[56]

The presumption of regularity's more abstract predicate requirement bears out the presumption's rationales, which include separation of powers and administrative efficiency. *Chemical Foundation*'s context—the judiciary reviewing the executive branch[57]—plus the Court's

---

[50] *See generally* Note, *supra* note 45 (diving into the various applications and facets of the presumption of regularity).

[51] *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); *see Dandridge*, 25 U.S. at 69 (recognizing the presumption of regularity as conceptually distinct from typical evidentiary presumptions). *But see* Carissa Hessick, *supra* note 45 (citing that statement from *Favish* but also stating that the presumption of regularity is an "evidentiary presumption").

[52] Alan Z. Rozenshtein, *Another Blow to the Presumption of Regularity*, LAWFARE (Mar. 10, 2020, 1:47 PM), https://www.lawfareblog.com/another-blow-presumption-regularity; Note, *supra* note 45, at 2432 (calling the presumption a "deference doctrine").

[53] *See Routen v. West*, 142 F.3d 1434, 1440 (Fed. Cir. 1998) (citing evidence treatises) (concerning the presumption of aggravation) ("When the predicate evidence is established that triggers the presumption, the further evidentiary gap is filled by the presumption.").

[54] *R.H. Stearns Co.*, 291 U.S. at 63 (quoting *Dandridge*, 25 U.S. at 70).

[55] *Kyhn v. Shinseki*, 716 F.3d 572, 577 (Fed. Cir. 2013) (citing, as examples, *Miley v. Principi*, 366 F.3d 1343, 1346-47 (Fed. Cir. 2004) (presuming that VA officials acted consistently with their legal duty under 38 U.S.C. § 7105(b)(1) to mail the veteran notification of a rating decision); *Butler v. Principi*, 244 F.3d 1337, 1340-41 (Fed. Cir. 2001) (presuming VA officials acted consistently with their legal duty under 38 U.S.C. § 5104(a) to mail the veteran notice of appeal rights)); *see Dandridge*, 25 U.S. at 69 (stating that the law "presumes that every man, in his private and official character, does his duty, until the contrary is proved").

[56] *Ashley v. Derwinski* (*Ashley II*), 2 Vet.App. 307, 308 (1992). Appellant was unaware of any authority in which a court required more of a predicate from the Government. Oral Argument (O.A.) at 6:30-7:45, *Romero v. Wilkie*, U.S. Vet. App. No. 19-3687 (argued Oct. 15, 2020), http://www.uscourts.cavc.gov/oral_arguments_audio.php.

[57] 272 U.S. at 7-8, 14. The Court cited three other Supreme Court cases as support for the presumption of regularity. *See id.* at 15. Two of those, *The Confiscation Cases* and *United States v. Page*, do not discuss separation of powers

citations in its otherwise cursory analysis to cases that discuss separation of powers,[58] evinces the Court's conscious effort not to intrude on another branch's operations without good cause.[59] That Court cited three other Supreme Court cases as support for its statement of the presumption of regularity,[60] one of which was *United States v. Nix*.[61] *Nix* explicitly recognized governmental efficiency as a rationale for the presumption made there: "It would be an insupportable burden upon the officers of courts if, every time a question was made before the accounting officers of the Treasury of the correctness of their account, they were required to produce affirmative evidence of every item."[62] Both the Federal Circuit and this Court have also recognized efficiency as a rationale for the presumption of regularity.[63] After all, "[i]f every government action had to be supported with reams of documentation as to its scrupulousness, or if the government had to follow every jot or tittle of the law, governing would grind to a halt."[64]

These concerns only go so far, though; "[t]he presumption of regularity is not absolute."[65] Under certain circumstances, courts can and will limit the application of this common law

---

explicitly, but their contexts suggest that such concerns influenced the Court's reasoning. Both cases involved laws that required action by the President, and both involved allegations of noncompliance because the President did not do as the statute required. *The Confiscation Cases*, 87 U.S. 92, 108-09 (1873); *Page*, 137 U.S. 673, 678-80 (1891). Yet in both cases the Court upheld the action based on presumptions. *Confiscation Cases*, 87 U.S. at 108-09; *Page*, 137 U.S. at 678-80.

[58] 272 U.S. at 15 (citing *Dakota Cent. Tel. Co. v. South Dakota ex rel. Payne*, 250 U.S. 163, 184 (1919) (discussing separation of powers)); *President of Monongahela Bridge Co. v. United States*, 216 U.S. 177, 195 (1910) (same)).

[59] *See* Rozenshtein, *supra* note 52 ("The presumption's tolerance for error also plays an important separation-of-powers function: It protects the judiciary from too-frequent conflicts with the executive branch, which could in the long term weaken the judiciary's checking ability."). *But see* Carissa Hessick, *supra* note 45 (stating that the presumption of regularity "was used to allocate burdens of proof, not to prevent discovery or to insulate executive action from judicial review").

[60] 272 U.S. at 15.

[61] 189 U.S. 199 (1903).

[62] *Id.* at 206.

[63] *See Parks v. Shinseki*, 716 F.3d 581, 585 (Fed. Cir. 2013) (stating, while discussing the presumption of regularity, that "[a] presumption exists, of course, to eliminate the burden to produce evidence"); *Wise v. Shinseki*, 26 Vet.App. 517, 525 (2014) (quoting *Parks*, 716 F.3d at 585 ("The purpose of the presumption [of regularity] is 'to eliminate the burden [on VA] to produce evidence' . . . .")).

[64] Rozenshtein, *supra* note 52.

[65] *Ashley II*, 2 Vet.App. at 309.

creature.[66] Namely, when irregularity plainly appears from the record, both the Federal Circuit and this Court have refused to presume regularity.[67] Indeed, to presume regularity in the face of an "appearance of irregularity"[68] would defy logic. So then courts have not required the party challenging the presumption to supply more evidence of irregularity when the appearance of irregularity is apparent; to do so would be redundant and wasteful of resources. Instead, the Federal Circuit and this Court have "reverse[d]," or inverted, the presumption—or assumed that that which appears irregular is in fact irregular—and have required the Government to disprove the appearance of irregularity.[69] When such reversals occur, they seem to function the same as putting the Government to proof after a successful rebuttal. To be sure, even if no irregularity plainly appears from the record, as a matter of course, a challenger gets an opportunity to produce clear evidence to rebut the presumption, and if she does so, the Government is put to proof.[70] Either way, whether a court or challenger identifies it, clear evidence of irregularity is what robs the presumption of regularity of its power.

That overview of the presumption of regularity gives us much needed context to consider the parties' arguments about the proper predicate for the presumption of regularity in this case and the sufficiency of appellant's rebuttal evidence, to which we turn now.

### III. PARTIES' ARGUMENTS

Appellant advances two theories of error. She argues first that the Board erred in concluding that the presumption of regularity applied without requiring VA to produce predicate evidence of sound mailing practices and procedures; in fact, she says, she proved that VA's process is irregular.[71] Alternatively, appellant argues that, assuming the presumption applies, the Board

---

[66] *See Dandridge*, 25 U.S. at 69-70 (stating that the law "will presume that all things are rightly done, unless the circumstances of the case overturn this presumption"); *Crumlich*, 31 Vet.App. at 202 (mentioning that the "general" presumption of regularity is "judicially created").

[67] *See, e.g.*, *United States v. Roses Inc.*, 706 F.2d 1563, 1567 (Fed. Cir. 1983); *Wise*, 26 Vet.App. at 525 (citing *Roses Inc.* as analogous precedent). Note that the possibility of spotting an apparent irregularity is different than requiring a predicate finding that a Government agency has a regular process for performing an official duty required by law.

[68] *Wise*, 26 Vet.App. at 527.

[69] *Roses Inc.*, 706 F.2d at 1567; *see Ashley I*, 2 Vet.App. at 66 (quoting *Roses Inc.*, 706 F.2d at 1567).

[70] *See, e.g.*, *Crumlich*, 31 Vet.App. at 205-06.

[71] Appellant's Brief (Br.) at 9-15.

erred by concluding that she had not rebutted the presumption; she contends she did rebut the presumption and points to the Board's concession of, and substantial evidence of, irregular mailing practices, coupled with statements of nonreceipt.[72] She further argues the Board's error as to rebuttal arose from the Board's erroneous conclusion of law that rebuttal evidence must be specific to appellant's case. Under either theory, the Secretary failed to prove actual mailing, so, says appellant, the Court should reverse the Board's findings that VA had mailed the August 16, 2017, SOC and that the November 6, 2017, merits Substantive Appeal was untimely.[73] If not reversal, she asks for remand and insists that we should not afford the Secretary a further opportunity to prove actual mailing.[74]

For his part, the Secretary argues that the Court should affirm the Board's decision in all respects. In response to appellant's first theory of error, the Secretary argues that the presumption's proper predicate is VA's duty to mail an SOC when a claim calls for one, as provided in 38 U.S.C. § 7105(d)(1) and (3) and 38 C.F.R. § 19.30.[75] As for the alternative theory, though the Secretary conceded at oral argument that general evidence is germane to the analysis,[76] he doubles down on the Board's conclusion that clear rebuttal evidence must be specific to the facts of the case at hand.[77] The Secretary insists that in the case at hand appellant failed to rebut the presumption. At oral argument, the Secretary conceded that he cannot prove actual mailing conclusively.[78]

## IV. ANALYSIS

We hold as a matter of law that the presumption of regularity applied in this case, as the Board concluded. But we also hold as a matter of law that appellant rebutted the presumption by clear evidence consisting of the Board's favorable factual finding that the appellant had produced "substantial evidence . . . that reflects a widespread problem with VA not mailing correspondence," which we cannot review, plus CCK's statement of nonreceipt. Therefore, we will

---

[72] *Id.* at 15-20.

[73] *Id.* at 20-22.

[74] *Id.* at 22-23.

[75] Secretary's Br. at 13.

[76] O.A. at 26:00-28:42.

[77] *Id.*; Secretary's Br. at 11, 14, 16.

[78] O.A. at 43:25-45:30.

reverse the Board's conclusion that appellant did not rebut the presumption. Though, as we explain, the Secretary effectively concedes that he cannot prove actual mailing, we may not find in the first instance when the window to appeal began or whether the November 6, 2017, Form 9, appellant's merits Substantive Appeal, was timely, so we will remand that matter for the Board to do so.

## A. Step 1: Predicate

In its decision, the Board applied the presumption of regularity based on caselaw.[79] The Board also recognized VA's official duty:[80] When VA prepares an SOC, "[c]opies of [it] . . . will be submitted to the claimant and to the claimant's representative, if there is one."[81] "The [SOC] will be forwarded to the appellant at the latest address of record and a separate copy provided to his or her representative (if any)."[82] The date of the SOC's mailing triggers a 60-day window within which the claimant must appeal if she so chooses.[83] If the SOC is not mailed to the claimant's representative, the mailing requirement is not met, and the 60-day clock does not start to run.[84] Because this case concerns VA's performance of that legal duty as provided in statute and regulation, the presumption of regularity applies; we presume that VA performs this duty unless there is clear evidence to the contrary.[85]

---

[79] *See* R. at 10 (citing *Ashley I*, 2 Vet.App. at 64-65, for the presumption of regularity).

[80] *Id.* (quoting 38 U.S.C. § 7105(d)(3)).

[81] § 7105(d)(3). We note that the statute and regulations at issue in this case have been amended effective February 19, 2019, as part of VA's transition to a new appeals process. *See* Veterans Appeals Improvement and Modernization Act of 2017 (VAIMA), Pub. L. 115-55, § 2(q)(1), 131 Stat. 1105 (Aug. 23, 2017); 84 Fed. Reg. 2449 (Feb. 7, 2019) (providing notice that the effective date of the new VA appeals system outlined in the VAIMA is February 19, 2019). Unless otherwise noted, all references to statutes and regulations in this opinion refer to the versions in effect at the time of the August 2017 SOC.

[82] 38 C.F.R. § 19.30(a) (2017).

[83] § 7105(d)(3).

[84] *Kuo v. Derwinski*, 2 Vet.App. 662, 666 (1992) (holding that the 60-day window did not commence when VA mailed a copy of the SOC to a representative only); *see Ashley I*, 2 Vet.App. at 64 (interpreting a similar mailing requirement for the Board decision).

[85] *See Kyhn*, 716 F.3d at 577. We note that this Court stated, in *Crain v. Principi*, that "[i]n order for this presumption [of regularity] to attach [to VA's mailing of an SOC], VA must mail notice to the latest address of record." 17 Vet.App. 182, 186 (2003); *see also Matthews v. Principi*, 19 Vet.App. 23, 27, *opinion adhered to as modified on reconsideration sub nom. Matthews v. Nicholson*, 19 Vet.App. 202 (2005), *aff'd*, 176 F. App'x 110 (Fed. Cir. 2006). The regulation requiring VA to send an SOC to the latest address of record existed at the time of the *Crain* decision, so it is unclear why the *Crain* Court did not state that it is presumed that VA had complied with that regulatory duty, as the Court subsequently did in *Clarke*, 21 Vet.App. at 133 (presuming that the Secretary properly discharged his official duty to mail a copy of an RO decision to the claimant's "last known address"), but rather suggested that it was necessary to find a predicate that VA had used the correct address. (That said, an incorrect address can be the kind of "clear evidence" that reverses or rebuts the presumption of regularity in this context. Indeed, a few sentences later the *Crain*

Appellant's insistence that VA must have proven a predicate beyond an official duty here is unavailing. In her brief, appellant relies on *Routen*,[86] *Malack v. BDO Seidman, LLP*,[87] and *Posey v. Shinseki*,[88] to argue that VA must have shown predicate evidence of regular mailing processes and practices for the presumption of regularity to attach. Her reliance on those cases is misplaced. *Routen* did not involve the presumption of regularity; it concerned the presumption of aggravation.[89] And appellant makes no effort to explain why *Routen* should control over precedent specific to the presumption of regularity. At most, the part of *Routen* that mentions the necessity of predicate evidence generally applies to typical evidentiary presumptions—which, as explained above, the presumption of regularity is not.[90] Similarly, appellant relies on *Malack*, a nonbinding case discussing evidentiary presumptions generally,[91] without explaining how or why that reasoning does or should displace on-point precedent.

As for *Posey*, appellant relies on it for the proposition that the presumption of regularity "has 'at [its] root a showing that the [result] was the product of a consistent, reliable procedure.'"[92] But that part of *Posey* was dicta; after dismissing the case on jurisdictional grounds, the Court "fe[lt] compelled to comment."[93] Further, appellant attempts to rip that single statement from its

---

Court seemingly recognized as much. *See* 17 Vet.App. at 187 (noting that "VA's use of an incorrect address for a claimant constitutes the 'clear evidence' needed to rebut the presumption of regularity")).

More importantly, the Court in *Crain* held that "the evidence showing that the RO used an incorrect ZIP Code for the appellant, in conjunction with the appellant's assertion of nonreceipt of the November 1994 SOC, constitutes the clear evidence that is needed to rebut the presumption of regularity." *Id.* at 189. Notably, even though VA had used an incorrect ZIP Code, the Court did not find that the presumption had not *attached*. Because the Court's decision instead turned on its conclusion that the presumption had been *rebutted*, we conclude that *Crain*'s statement regarding the predicate evidence necessary for the presumption to attach is dicta. But no matter; in keeping with *Crain*, here the Board found that "[t]he August 16, 2017[,] SOC was addressed to the Veteran's correct mailing address of record, was copied to the Veteran's representative, and was addressed to the correct address of record for the Veteran's representative." R. at 9. The Board covered all possible bases and correctly concluded that the presumption of regularity applied here.

[86] 142 F.3d at 1440.

[87] 617 F.3d 743, 749 (3d Cir. 2010).

[88] 23 Vet.App. 406 (2010), *as amended*, No. 08-0240, 2010 WL 1842256 (Vet. App. May 10, 2010).

[89] 142 F.3d at 1437.

[90] *See supra* pp. 6-8.

[91] *See* 617 F.3d at 749.

[92] Appellant's Br. at 10 (quoting *Posey*, 23 Vet.App. at 410).

[93] *Posey*, 23 Vet.App. at 409.

limiting context. In *Posey*, everyone acknowledged that the presumption had been rebutted and that the Secretary bore the burden to prove actual mailing, but the Secretary failed to do so because he relied on a handwritten note in the file.[94] The Court resurrected the presumption of regularity to discuss *remailing*.[95] Finally, and perhaps most importantly, *Posey*'s support for commentary about a showing of procedure is unpersuasive. Regarding the presumption of regularity, the *Posey* Court cited only *Sthele v. Principi*,[96] which did not require such a predicate finding. Rather, in *Sthele*, the Court had, without explanation, ordered the Secretary to provide evidence of VA mailing practices and procedures and before doing so gave no recognition to the role of the presumption of regularity[97]—only to then assume (without analysis) that the presumption of regularity attached.[98] The *Sthele* Court then held that the presumption had been *rebutted* based on evidence of irregularities that the Court procured plus the appellant's statement of nonreceipt.[99] But leaving aside this parsing, neither *Posey* nor *Sthele* does the work that appellant would have them do.

Additionally, at oral argument,[100] appellant invoked *Crumlich*,[101] in which this Court assumed without deciding that the presumption of regularity applied, and in a footnote declared that, "[f]or the presumption of regularity to apply, there must first be some evidence of a regular process."[102] The problem for appellant is, the very case the *Crumlich* Court cited in the next sentence,[103] *Kyhn*, is the one in which the Federal Circuit recognized that the presumption of regularity may be "premised upon independent legal authority rather than on evidentiary

---

[94] *Id.*

[95] *Id.* at 410 ("What the Secretary failed to do in this case was demonstrate that the remailing procedure followed in Mr. Posey's case (i.e., a handwritten notation by an unidentified person on an internal document not sent to the claimant) is the consistent and regular procedure that VA follows in cases in which the Board decision is returned as undeliverable and remailed to the claimant at a different address.").

[96] *Id.* (citing *Sthele*, 19 Vet.App. 11, 16-17 (2004)).

[97] *Sthele*, 19 Vet.App. at 12-15.

[98] *Id.* at 17.

[99] *Id.*

[100] O.A. at 5:15-:55.

[101] 31 Vet.App. 194.

[102] *Id.* at 205 n.5.

[103] *See id.* (citing *Kyhn*, 716 F.3d at 577-78).

findings."[104] *Kyhn*'s statement accords with our review of Supreme Court caselaw and we follow it here. Clearly, *Crumlich*'s reference to "evidence" was not meant to exclude the legal authority that can support the application of the presumption, particularly considering that the issue in that case was not *whether* the SOC had been mailed but *when* it was mailed and there was no valid legal authority on that issue.

The Board properly applied the presumption of regularity in this case. All in all, appellant mistakes a sufficient predicate for a necessary one. Interestingly, as we discuss next, the Board made the same kind of mistake of law—mistaking sufficiency for necessity—except with respect to rebuttal evidence.

### B. Step 2: Rebuttal

As noted above, "[w]hether clear evidence exists to rebut the presumption is a question of law that the Court considers de novo."[105] To be clear, the inquiry here is whether appellant has produced clear evidence sufficient to persuade us that we should not continue to *presume* that VA did its duty and instead should require VA to *prove* that it did its duty in *this* case. Though a statement of nonreceipt standing alone is not enough to rebut the presumption, a statement of nonreceipt coupled with other evidence can be.[106] Other evidence can include, for example, "clear evidence to the effect that [ ]VA's 'regular' mailing practices are not regular or that they were not followed."[107]

Here, besides a statement of nonreceipt, appellant presented evidence that the Board characterized as "substantial evidence . . . that reflects a widespread problem with VA not mailing correspondence."[108] This included evidence that VBA employees acknowledged VA's "continued

---

[104] 716 F.3d at 577.

[105] *Crumlich*, 31 Vet.App. at 205.

[106] *See Sthele*, 19 Vet.App. at 17 (recognizing that "a mere statement of nonreceipt is insufficient to rebut the presumption of regularity," but holding that "evidence . . . reflect[ing] multiple irregularities in VA's handling of the appellant's case . . . , coupled with the appellant's assertion of nonreceipt, constitute the clear evidence that is necessary to rebut the assumed presumption of regularity"). Because appellant's theory is that VA failed to mail the SOC, not that VA made a mistake in mailing, *Crain*'s rule is inapplicable here. *See* 17 Vet.App. at 187 (stating that "[i]n order to rebut the presumption under current caselaw where the mailing *was* made to the latest address of record, the appellant must establish *both* that the mailing was returned as undeliverable *and* that there were other possible and plausible addresses available to the Secretary at the time of the [Board] decision" (emphasis in original)).

[107] *See Ashley II*, 2 Vet.App. at 309.

[108] R. at 12.

15

failure to consistently mail representatives copies of their claimants' decisional documents."[109] And so, the Board's findings about VA's mailing practices lead us to hold that in this case appellant presented clear evidence sufficient to rebut the presumption that VA did its duty to mail CCK the SOC.[110]

Indeed, it would make little sense to continue to presume in *this* case that VA mailed a decisional document to a representative when the representative says he never received the document and provides evidence that leads the Board to find "substantial evidence . . . that reflects a widespread problem with VA not mailing correspondence."[111] The Board's finding here, where the presumption concerns VA's performance of a duty to mail, is like a finding of substantial evidence that "VA's 'regular' mailing practices are not regular" where the presumption concerns the regularity of particular VA mailing practices.[112] The difference is context. But in both situations, "the Secretary is no longer entitled to the benefit of the presumption."[113] Whether anyone can prove that the SOC was or was not, in fact, mailed is a different question.

The Secretary insists that we can review or should ignore the Board's statement ("substantial evidence . . . that reflects a widespread problem with VA not mailing correspondence") because the statement does not constitute a favorable factual finding. But it does. And this Court is not permitted to review a "finding of material fact [favorable] to the claimant."[114]

Whether there is "a widespread problem with VA not mailing correspondence" is a factual question.[115] The answer might be a broad, sweeping factual finding, but it is factual. To state the sky is blue right now is to state a fact. That statement may lack context and specificity and be

---

[109] R. at 192 ¶ 11, 193 ¶ 21; *see* R. at 13 ("At most VA acknowledged—not in the context of discussing this Veteran's case—a widespread problem with mailing.").

[110] To be clear, we make no determination that this evidence was sufficient to show that there is a widespread problem with VA not mailing correspondence. That is a finding the Board made in its role of weighing the evidence.

[111] R. at 12.

[112] *Ashley II*, 2 Vet.App. at 309. *See* discussion *infra* pp. 18-19 for more detail on *Ashley II*'s context.

[113] *Ashley II*, 2 Vet.App. at 309.

[114] 38 U.S.C. § 7261(a)(4) (permitting review only of "adverse" material findings); *see Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007) (citing 38 U.S.C. § 7261(a)(4) (as amended by the Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 401, 116 Stat. 2820, 2832 (Dec. 6, 2002) (providing for Court to reverse or set aside only findings of fact "adverse to the claimant"))) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority."), *aff'd in part, dismissed in part sub nom. Medrano v. Shinseki*, 332 F. App'x 625 (Fed. Cir. 2009).

[115] R. at 12.

broad, but it is a fact. So too here. The Board found that there was "substantial evidence . . . that reflects a widespread problem with VA not mailing correspondence" and that "VA acknowledged . . . a widespread problem with mailing,"[116] with no contradicting evidence provided by VA. Just because the Board may not have recognized the legal significance of its findings does not mean it did not make them.

The Board's factual finding of a widespread problem with VA not mailing correspondence is material. Whether VA performs its statutory and regulatory duties to mail correspondence goes to the heart of this appeal.

And that factual finding is favorable to appellant. Her position is that VA does not and did not here mail correspondence; the Secretary's position is that VA does and did. The fact that the Board member who reviewed the evidence in this case found a widespread problem with VA not mailing correspondence in no way helps the Secretary; it only helps appellant.

Granted, we may not have made that finding in the first instance. And admittedly, it is difficult to pinpoint what specific evidence led the Board to its conclusion. But that is beside the point. Because the Board's factual finding is material and favorable to appellant, we lack power to reverse that finding.[117] What's more, neither VA nor the Secretary made any efforts to counter appellant's evidence. And it was the Board's prerogative to find as it did on the evidence.[118]

Whether the Board then ignored its own finding and appellant's rebuttal evidence entirely or gave them less weight is unclear from its analysis. Either way, its failure to appreciate the legal significance of its own factual finding arose because it understood this Court to have "consistently indicated that evidence that clearly rebuts the presumption should be specific to the facts of the case at hand."[119] Therefore, the Board concluded that appellant had failed to rebut the presumption because, "[h]ere, [she] has not submitted any evidence specific to [her] file or the mailing practices as applicable to the handling of [her] case."[120]

---

[116] R. at 12, 13.

[117] *See* § 7261(a)(4); *Medrano*, 21 Vet.App. at 170.

[118] *See Washington v. Nicholson*, 19 Vet.App. 362, 369 (2005); *Owens v. Brown*, 7 Vet.App. 429, 433 (1995).

[119] R. at 13 (citing *Clarke*, 21 Vet.App. at 135; *YT*, 9 Vet.App. at 199; *Chute*, 1 Vet.App. at 353; *Schoolman*, 12 Vet.App. at 311).

[120] *Id.* (emphasis in original).

There the Board erred because it misunderstood our caselaw. The law that the Board cited merely says what evidence is sufficient—not what is necessary—to rebut the presumption of regularity.[121]

And, in fact, this Court held that non-claimant-specific evidence could be clear rebuttal evidence in *Ashley II*.[122] There, the Vietnam Veterans of America (VVA) had contracted with the National Veterans Legal Services Project (NVLSP) to provide legal services for VVA and its clients.[123] This Court afforded the Secretary the presumption of regularity for his practice, in the regular course of business, of sending all official transmissions, including BVA decisions, to the VVA as the representative of record.[124] The appellant contended that the Secretary did not follow—regularly or in her case—that practice and treated the VVA and the NVLSP as the same entity.[125] In support of that contention appellant submitted five letters from other claimants' cases "addressed to the VVA and the NVLSP at a single address, that of the NVLSP."[126] The Court concluded that the appellant's evidence "directly contradict[ed] the Secretary's evidence with respect to what is, in fact, the regular course of business at the BVA" and thus rebutted the presumption.[127] Is it possible that VA got it right in the appellant's case despite that evidence from other cases? Sure. But that is not the point of the rebuttal stage; indeed, the Secretary had a chance to prove he got it right *in the appellant's case* in the next stage but failed to do so.[128]

*Ashley II* instructs us that the standard for what evidence suffices as clear rebuttal evidence in a given case certainly depends on the nature of the presumption at issue in a given case, but

---

[121] *Clarke*, 21 Vet.App. at 133-35 (discussing what evidence is "sufficient" to rebut the presumption); *Chute*, 1 Vet.App. at 353 (holding that "the evidence herein is sufficient to rebut the presumption of regularity" and making no attempt to delineate the outer bounds of the law); *see YT*, 9 Vet.App. at 199 (addressing an argument based only on a statement of nonreceipt and making no attempt to delineate the outer bounds of the law). Note that *Schoolman* discussed the benefit of the doubt doctrine; it is not clear how that case supports the Board's legal position. *See* 12 Vet.App. at 311.

[122] *See* 2 Vet.App. at 310 (discussing appellant's rebuttal "clear evidence": "copies of a number of letters dating from the time of the [Board] decision at issue in this appeal which purport to transmit [Board] decisions").

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] *Id.*

[127] *Id.* at 311.

[128] *Id.*

clear evidence need not be claimant specific. Clear evidence need not be direct evidence that the Secretary failed to mail something to the appellant. Here, the Secretary relies on VA's legal duty to mail an SOC to a claimant's representative to trigger the presumption, which is fine—except the Board found that VA has a "widespread problem" of failing to perform its mailing duties based on appellant's evidence, and CCK asserted nonreceipt. Presumption rebutted.

Thus, the Board's reasoning was wrong as a matter of law. And because we conclude that appellant produced clear evidence sufficient to rebut the presumption of regularity in this case, we reverse the Board's conclusion to the contrary.

### C. Secretary's Burden

Because we hold that appellant rebutted the presumption of regularity, the burden shifts to the Secretary to establish that the August 16, 2017, SOC was mailed as required by statute and regulation, or that appellant's representative actually received the SOC.[129] To be clear, the standard of proof is preponderance of the evidence.[130] The standard has never been at issue in this case. Rather, the issue is whether the Secretary has evidence to meet that standard—and he doesn't.

Because the Board concluded that the presumption was not rebutted, the Board never shifted the burden to VA and thus never found whether VA could prove actual mailing or receipt under any standard. No matter; though in most situations we would remand the matter to the Board to make the predicate factual findings on this question, here, as was the case in *Crain*, we are "better situated than the Board to decide whether the Secretary has met his burden."[131] After all, equally true here as in *Crain*, "the Secretary is not a party who appears before the Board and the Secretary's burden in this type of adversarial proceeding does not fit the VA adjudication system where the adjudicator would also have to carry the burden of showing compliance with the statute."[132]

---

[129] *See Crain*, 17 Vet.App. at 194.

[130] *Toomer v. Shinseki*, 524 F. App'x 666, 669 (Fed. Cir. 2013) (stating that "if the Veterans Court determines [the veteran's rebuttal evidence] rises to the level of clear evidence, [then it must] consider if the government has shown by the preponderance of the evidence that the challenged action actually occurred").

[131] 17 Vet.App. at 194.

[132] *Id.*

The Secretary has made no effort to carry that burden on appeal in his brief or at oral argument or to persuade the Court that he could carry that burden on remand.[133] In fact, at oral argument the Secretary conceded that there is nothing in the record that could demonstrate actual mailing.[134] To be sure, he insisted that "all the indicia" are there and constitute "circumstantial evidence" of actual mailing: a copy of the SOC with an attached notification letter in the record, correct identification of counsel and counsel's address, and appellant's receipt of the SOC.[135] But, this evidence speaks to the fact that the SOC was drafted and addressed, not to whether it was subsequently placed in the mail; in other words, the Secretary asks us to infer from evidence of drafting that the SOC was mailed to the appellant's counsel. He did not explain, however, how this evidence supports such an inference, particularly without the benefit of a presumption, nor did he identify evidence that might be obtained on remand that could potentially establish, by a preponderance of the evidence, that the SOC was actually mailed.[136] This is not a case in which something was indisputably mailed but to the wrong address; the dispute is whether, after the SOC was prepared and properly addressed, it was *actually mailed* to appellant's counsel. Again, the Secretary admits that no record evidence demonstrates actual mailing.[137] And the limits of his imagination as to what evidence could prove that fact do not absolve him of his burden.[138] He seemingly relied only on the presumption, which has been rebutted. Therefore, although we could remand the matter for the Secretary to attempt to shoulder his burden, the Secretary's concessions at oral argument indicate that such a remand would be pointless here.

## D. Remedy

Where the Secretary fails to carry his burden to show actual mailing or receipt, the clock does not start to run on appellant's time to appeal from an SOC until appellant's representative

---

[133] *Id.*

[134] O.A. at 43:25-45:30.

[135] *Id.* at 43:25-45:30, 50:50-51:58.

[136] For example, such evidence might include "an affidavit from the employee who mailed the check, or . . . proof of procedures followed in the regular course of operations which give rise to a strong inference that the check was properly addressed and mailed." *Godfrey v. United States*, 997 F.3d 335, 338 (7th Cir. 1993).

[137] O.A. at 43:25-45:30.

[138] *Id.*

receives the SOC.[139] From the record and the Secretary's concession, it very well may be that appellant's merits Substantive Appeal was timely. However, it is the Board's responsibility, not ours, to make the necessary factual findings in the first instance.[140] Therefore, we remand the matter for the Board to do so.[141]

On remand, appellant is free to submit additional evidence and argument on the remanded matter, and the Board is required to consider any such relevant evidence and argument.[142] The Board must proceed expeditiously, in accordance with 38 U.S.C. § 7112.

## V. CONCLUSION

The Secretary's motion for reconsideration is granted. The Court withdraws its November 20, 2020, panel decision and issues this decision in its stead. After considering the parties' briefs, oral argument, the Secretary's motion, the governing law, and the record, the Court SETS ASIDE the May 9, 2019, Board decision and REMANDS this matter for further proceedings consistent with this decision.

---

[139] *Crumlich*, 31 Vet.App. at 206; *Crain*, 17 Vet.App. at 187; *Kuo*, 2 Vet.App. at 666; *see also Ashley I*, 2 Vet.App. at 64.

[140] *See Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (per curiam order) (stating that "this Court 'may remand if it believes the [Board] failed to make findings of fact essential to the decision; it may set aside findings of fact it determines to be clearly erroneous; or it may reverse incorrect judgments of law based on proper factual findings; "but it should not simply [make] factual findings on its own"'" (quoting *Hensley v. West*, 212 F.3d 1255, 1263 (Fed. Cir. 2000))).

[141] *See id.*

[142] *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to the benefit sought); *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order).